Fred Norton (SBN 224725)
Bree Hann (SBN 215695)
Matt Turetzky (SBN 280997)
Tyler M. Layton (SBN 288303)
THE NORTON LAW FIRM PC
299 Third Street, Suite 106
Oakland, California 94607
Telephone: (510) 906-4900
Fax: (510) 906-4910
fnorton@nortonlaw.com
bhann@nortonlaw.com
mturetzky@nortonlaw.com
tlayton@nortonlaw.com

*Attorneys for Defendants AREND NOLLEN, LEON HEDGES, DAVID PASANEN, and SOCIAL MEDIA SERIES LIMITED*

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| FACEBOOK, INC., a Delaware corporation, and INSTAGRAM, LLC, a Delaware limited liability company,<br><br>   *Plaintiffs*,<br><br>  v.<br><br>AREND NOLLEN, LEON HEDGES, DAVID PASANEN, and SOCIAL MEDIA SERIES LIMITED,<br><br>   *Defendants*. | Case No.: 3:19-cv-02262<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND FORUM NON CONVENIENS; MEMORANDUM OF POINTS AND AUTHORITIESIN SUPPORT THEREOF**<br><br>[Declarations of Arend Nollen, Leon Hedges, David Pasanen, David Gerard Dewar, and Fred Norton, Supporting Exhibits, and (Proposed) Order concurrently filed]<br><br>Date:  July 10, 2019<br>Time: 2:00 p.m.<br>Location: Courtroom 2<br><br>Complaint Filed: April 25, 2019 |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on July 10, 2019 at 2:00 p.m., or as soon thereafter as counsel may be heard in Courtroom 2 of the above entitled Court, located at 450 Golden Gate Avenue, San Francisco, CA 94102, Defendants Arend Nollen, Leon Hedges, David Pasanen, and Social Media Series Limited ("SMS") (collectively "Defendants") will move this Court to dismiss Plaintiffs Facebook, Inc. ("Facebook") and Instagram, LLC's ("Instagram") (collectively "Plaintiffs") Complaint pursuant to Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction, and, in the alternative, to dismiss Plaintiffs' Complaint based on the common law doctrine of *forum non conveniens*.

This Motion to Dismiss will be made on the grounds that this forum cannot exercise personal jurisdiction over Defendants, which are New Zealand citizens and a New Zealand limited liability company, and which do not have the requisite minimum contacts with the State of California, that New Zealand is an adequate and proper alternate forum to litigate the parties' dispute, and that private and public interests weigh in favor of dismissal.

This Motion to Dismiss is based upon this Notice, the attached Memorandum of Points and Authorities, the Complaint and its attachments, the separately filed Declarations of Arend Nollen, Leon Hedges, David Pasanen, David Gerard Dewar and Fred Norton, and all records, pleadings, and argument as may be presented at or before the hearing on this Motion.

Dated: June 12, 2019          **THE NORTON LAW FIRM PC**


By:   *
/s/ Fred Norton*
 _____
Fred Norton
*Attorneys for Defendants*

# TABLE OF CONTENTS

I.     INTRODUCTION ............................................................................................... 1

II.    SUMMARY OF RELEVANT FACTS ............................................................. 2

    A.   Individually Named Defendants ............................................................ 2

    B.   Social Media Series Limited ................................................................. 3

    C.   Non-Party Entities ................................................................................. 3

    D.   Defendants' Use of Instagram ............................................................... 5

    E.   Non-Party Entities' Use of Instagram ................................................... 5

    F.   Plaintiffs Facebook and Instagram ........................................................ 6

    G.   Instagram's Terms of Use ...................................................................... 7

III.   LEGAL STANDARDS ..................................................................................... 8

    A.   Personal Jurisdiction Standard .............................................................. 8

    B.   Rule 12(b)(2) Motion to Dismiss for Lack of Personal Jurisdiction..................... 9

    C.   *Forum Non Conveniens* ...................................................................... 10

IV.    DEFENDANTS ARE NOT SUBJECT TO PERSONAL JURISDICTION IN CALIFORNIA ................................................................................................. 11

    A.   Defendants Did Not Consent to Personal Jurisdiction in California.................... 11

        1.   The Individually Named Defendants Did Not Consent to Jurisdiction in California............................................................. 12

        2.   Defendants Did Not Use "Thousands" of Instagram Accounts in Connection with Their Business ................................................... 14

    B.   Defendants Do Not Have the Necessary "Continuous and Systematic Contacts" With California to Confer General Jurisdiction ................................. 15

    C.   Plaintiffs Cannot Establish that Specific Jurisdiction over Defendants Is Proper ................................................................................................... 16

        1.   Defendants Have Not Purposefully Availed Themselves of the Privilege to Do Business in California, Nor Purposefully Directed Their Activities Toward California ........................................... 16

ii

CASE NO. 3:19-CV-02262 – DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS FOR
LACK OF PERSONAL JURISDICTION AND FORUM NON CONVENIENS

2.     Plaintiffs' Claims Do Not Arise Out Of, or Result From, Any Alleged Forum-Related Activities by Defendants ................................... 17

3.     Exercising Jurisdiction Over Defendants Would Be Unreasonable ........ 18

D.     Even If Social Media Series Limited Were Subject to Personal Jurisdiction in This Court, the Individually Named Defendants Are Not Subject to Personal Jurisdiction in California ........................................................ 22

V.     PLAINTIFFS' COMPLAINT SHOULD BE DISMISSED BASED ON THE DOCTRINE OF *FORUM NON CONVENIENS* ............................................. 23

A.     New Zealand Is an Adequate Alternative Forum ................................... 23

B.     Private and Public Interest Factors Favor Litigating This Matter in New Zealand ................................................................................................. 24

1.     The Private Interest Factors Favor New Zealand ................................... 24

2.     The Public Interest Factors Favor New Zealand .................................... 24

3.     The Balance of Conveniences Favors Dismissal .................................... 25

VI.     CONCLUSION ........................................................................................ 25

iii

CASE NO. 3:19-CV-02262 – DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS FOR
LACK OF PERSONAL JURISDICTION AND FORUM NON CONVENIENS

1

## **TABLE OF AUTHORITIES**

2   Cases

3   *American Dredging Co. v. Miller*, 510 U.S. 443 (1994)........................................................ 11, 23

4   *Asahi Metal Industry Co., Ltd. v. Superior Court*, 480 U.S. 102 (1987) ................... 10, 18, 19, 20

5   *Bay State Anesthesia, Inc. v. Mallinckrodt, Inc.*, 2002 WL 31761286 (D. Mass.
        Dec. 6, 2002)........................................................................................................................ 13
6
7   *Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985)........................................................ 10, 16

    *Calder v. Jones*, 465 U.S. 783 (1984) ............................................................................ 17, 22, 23
8
9   *Core-Vent Corp. v. Nobel Industries AB*, 11 F.3d 1482 (9th Cir. 1993) ................... 19, 20, 21, 22

    *Creative Tech., Ltd. v. Aztech Sys. Pte., Ltd.*, 61 F.3d 696 (9th Cir. 1995) ......................... 24, 25
10
    *Data Disc, Inc. v. Sys. Tech. Associates, Inc.*, 557 F.2d 1280 (9th Cir. 1977). ............................ 9
11
12  *Davis v. Metro Productions, Inc.*, 885 F2d 515 (9th Cir. 1989) .................................................. 22

13  *Dole Food Co., Inc. v. Watts*, 303 F.3d 1104 (9th Cir. 2002)............................................... 17, 20

14  *Dorchester Fin'l Secur., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81 (2nd Cir. 2013)........................... 9

    *Dow Chem. Co. v. Calderon*, 422 F.3d 827 (9th Cir. 2005). ........................................................ 8
15
16  *FDIC v. British–American Ins. Co.*, 828 F.2d 1439 (9th Cir.1987) ............................................ 20

17  *Greenspun v. Del E. Webb Corp.*, 634 F.2d 1204 (9th Cir. 1980)................................................. 9

    *Harris Rutsky & Co. Inc. Servs., Inc. v. Bell & Clements Ltd.*, 328 F.3d 1122 (9th
18       Cir. 2003) ......................................................................................................................... 9, 11
19  *High Tech Pet Prods., Inc. v. Juxin Pet Prods. Co., Ltd.*, 2013 WL 1281619 (E.D.
         Cal. Mar. 27, 2013) .............................................................................................................. 9
20
21  *Int'l Shoe Co. v.  Washington*, 326 U.S. 310 (1945). ................................................................... 9

22  *Lockman Found. v. Evangelical Alliance Mission*, 930 F2d 764 (9th Cir. 1991)....... 11, 23, 24, 25

23  *Lueck v. Sundstrand Corp.*, 236 F.3d 1137 (9th Cir. 2001) ...................................................... 24

    *Mastrobuono v. Sherson Lehman*, 514 U.S. 52 (1995)............................................................... 14
24
25  *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171 (9th Cir. 2014) ................................................ 12

26  *Pebble Beach Co. v. Caddy*, 453 F.3d 1151 (9th Cir. 2006).................................................... 9, 11

27  *Piper Aircraft Co. v. Reyno*, 454 U.S. 235 (1981)................................................... 11, 23, 24, 25

28  *Rano v. Sipa Press, Inc.*, 987 F2d 580 (9th Cir. 1993) ........................................................ 10, 18

iv

CASE NO. 3:19-CV-02262 – DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS FOR
LACK OF PERSONAL JURISDICTION AND FORUM NON CONVENIENS

*Ranza v. Nike, Inc.*, 793 F.3d 1059 (9th Cir. 2015) .......................................................... 23

*Rey v. Rey*, 666 F. App'x 675 (9th Cir. 2016) ......................................................... 12, 13

*Ridgway v. Phillips*, 2019 WL 1746063 (N.D. Cal. Apr. 18, 2019). ............................... 9

*Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797 (9th Cir. 2004). ....................... passim

*Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422 (2007) .................... 11, 23

*Smith v. Antler Insanity, LLC*, 58 F.Supp.3d 716 (S.D. Miss. 2014) ............................. 22

*Terracom v. Valley Nat'l Bank*, 49 F.3d 555 (9th Cir. 1995) ....................................... 19

*Tuazon v. R. J. Reynolds Tobacco Co.*, 433 F.3d 1163 (9th Cir. 2006) ....................... 15

*United States v. First National City Bank*, 379 U.S. 378 (1965) ................................ 20

*Wenz v. Memery Crystal*, 55 F.3d 1503 (10th Cir. 1995) ............................................. 9

*Wu v. BDK DSD*, 2016 WL 1059534 (D. Ariz. Mar. 17, 2016) .................................. 12

Statutes

18 U.S.C. § 1030 ............................................................................................. 18

Cal. Code Civ. P. § 410.10 (2018). ..................................................................... 9

Cal. Penal Code § 502 ..................................................................................... 18

Fed. R. Civ. P. 12(b)(2). ................................................................................... 9

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

## I.   INTRODUCTION

3      Defendant Social Media Series Limited ("SMS") is a New Zealand-based marketing

4  company that is operated by three New Zealand citizens and residents – defendants Leon

5  Hedges, David Pasanen, and Arend Nollen (the "Individually Named Defendants") (together

6  with SMS, "Defendants"), and which formerly operated the website LikeSocial.co.  SMS is

7  headquartered in Upper Hutt, New Zealand, and the Individually Named Defendants live in

8  Upper Hutt (Messrs. Hedges and Nollen) and Lower Hutt (Mr. Pasanen), New Zealand.

9  Defendants have absolutely no connections to California or the United States; the Individuals

10 live and work exclusively in New Zealand, and SMS, which is organized under the laws of New

11 Zealand, has no business operations in, or ties to, the U.S.

12      Neither SMS, nor LikeSocial.co, nor Mr. Hedges, nor Mr. Pasanen have ever had an

13 Instagram account or agreed to Instagram's Terms of Use ("TOU" or "Terms").  Mr. Nollen has

14 only had a personal (and now closed) Instagram account – one that he used exclusively as a

15 consumer and never in connection with SMS's business.  Nonetheless, Plaintiffs Instagram, LLC

16 ("Instagram") and Facebook, Inc. ("Facebook") have sued Defendants in the Northern District of

17 California, claiming (incorrectly) that Defendants agreed to the Instagram TOU and the

18 jurisdiction clause contained therein.

19      This is simply false.  Three of the four defendants never agreed to the TOU, and the

20 fourth has only agreed only in connection with a personal account that has nothing to do with the

21 alleged commercial misconduct described in the Complaint.  However, even if Plaintiffs had

22 agreed to the TOU, that agreement – which Plaintiffs neglected to file with the Complaint – does

23 not require jurisdiction in California, but actually requires jurisdiction in New Zealand.

24      While Plaintiffs – two of the largest and most profitable social networking platforms in

25 the world – may prefer to litigate this case in California and force Defendants to defend a lawsuit

26 thousands of miles from their homes, it would be improper to subject Defendants to personal

27 jurisdiction in this Court.  Defendants have no contacts with California, much less intentional,

28

continuous, and systematic contacts that could give rise to personal jurisdiction. Defendants did not purposefully direct their conduct at California, nor purposefully avail themselves of the benefits of doing business in the state. None of the alleged misconduct took place in California, and all potential witnesses and evidence are in New Zealand. Dismissal of this case for lack of personal jurisdiction is proper.

Alternatively, the Complaint should be dismissed based on the doctrine of *forum non conveniens*. The same factors demonstrating that there is no personal jurisdiction over Defendants also establish that this Court is not the proper venue for this action. New Zealand provides an adequate alternative venue, and all of the private and public interest factors relevant to a *forum non conveniens* analysis weigh in favor of dismissal.

For these reasons, and as set forth more fully below, Defendants request that the Court dismiss Plaintiffs' Complaint with prejudice.

## II.   SUMMARY OF RELEVANT FACTS

### A.   Individually Named Defendants

Arend Nollen is a New Zealand citizen who resides in Upper Hutt, New Zealand. Nollen Decl. ¶ 2. Mr. Nollen conducts no business in the United States and has no business interests or assets in the U.S. *Id*. ¶¶ 4-5. He has never earned income in the U.S. or paid U.S. taxes. *Id*. ¶ 6. He has never traveled to the U.S. and has no family or friends in the U.S. *Id*. ¶ 3.

Leon Hedges is a New Zealand citizen who resides in Upper Hutt, New Zealand. Hedges Decl. ¶ 2. Mr. Hedges conducts no business in the United States and has no business interests or assets in the U.S. *Id*. ¶¶ 4-5. He has never earned income in the U.S. or paid U.S. taxes. *Id*. ¶ 6. Mr. Hedges has no family or friends in the U.S. and has visited the U.S. three times on vacation. *Id*. ¶ 3.

David Pasanen is a New Zealand citizen who resides in Lower Hutt, New Zealand. Pasanen Decl. ¶ 3. Mr. Pasanen conducts no business in California or the United States and has no business interests or assets in California or the U.S. *Id*. ¶¶ 5-6. He has never earned income in California or the U.S. or paid state or federal taxes. *Id*. ¶ 7. Mr. Pasanen has no family or friends in the U.S., and he has visited the U.S. twice on vacation. *Id*. ¶ 4.

1

**B.**     **Social Media Series Limited**

2

On or around January 8, 2016, Messrs. Nollen, Hedges, and Pasanen registered Social

3

Media Series Limited as a New Zealand limited liability company.  Pasanen Decl. ¶¶ 9, 11.  SMS

4

is a marketing agency headquartered in Upper Hutt, New Zealand, with Messrs. Nollen, Hedges,

5

and Pasanen as its sole directors and shareholders.  Pasanen Decl. ¶¶ 9-11.  Individually, Mr.

6

Nollen serves as SMS's marketing lead (Nollen Decl. ¶ 1), Mr. Hedges oversees web

7

development (Hedges Decl. ¶ 1) and Mr. Pasanen runs SMS customer service (Pasanen Decl. ¶

8

1).

9

SMS is not incorporated in California, nor has it qualified to do business in California.

10

Pasanen Decl. ¶ 12.  SMS has no subsidiaries incorporated or qualified to do business in

11

California.  *Id.* ¶ 13.  None of SMS's officers or directors reside or are domiciled in California.

12

*Id.* ¶ 14.  SMS has no employees residing or domiciled in California.  *Id.* ¶ 15.  SMS has no

13

branch office or comparable facilities in California, and it has no telephone listing or mailing

14

address in California.  *Id.* ¶ 16.  SMS has no bank accounts or other tangible personal or real

15

property in California.  *Id.* ¶ 17.  SMS does not direct any advertising specifically toward

16

California residents, nor does it advertise in any publications that are directed primarily toward

17

California residents; rather, SMS offers its services to anyone in the world through publicly

18

accessible websites.  *Id.* ¶ 18.  SMS's officers, directors and shareholders have never convened

19

in California, and none of its officers,  directors or shareholders attend business conferences or

20

similar functions within the state.  *Id.* ¶ 20.  While SMS utilizes third-party vendors from around

21

the world in connection with its business, none of its vendors are located in California or the U.S.

22

*Id.* ¶ 21.

23

**C.**     **Non-Party Entities**

24

*LikeSocial.co*

25

SMS formerly operated the website LikeSocial.co, which connected Instagram users

26

seeking to increase their visibility on the Instagram platform with third-party vendors that could

27

generate "likes" and "followers" for the user, thereby increasing the user's visibility on the

28

Instagram platform and enhancing the user's experience.  Pasanen Decl. ¶ 23.  Neither SMS nor LikeSocial.co had direct access to any Instagram users' accounts; all "likes" and "followers" that the user received in connection with their LikeSocial.co subscription were generated by third-party vendors.  *Id.* ¶ 24.  No third-party vendors with whom SMS worked in connection with the LikeSocial.co business were located in California or the U.S.  *Id.* ¶ 21.  LikeSocial.co voluntarily suspended operations in April 2019.  *Id.* ¶ 26

### *Social Envy Limited*

Prior to forming SMS, Messrs. Nollen and Hedges formed Social Envy Limited ("SEL"), a New Zealand LLC headquartered in Upper Hutt, New Zealand.  Messrs. Nollen and Hedges are the sole shareholders and directors of SEL, which is not a party to this lawsuit.  Hedges Decl. ¶ 8.  SEL is not incorporated in California, nor is it qualified to do business in California.  *Id.* ¶ 10.  SEL has no subsidiaries incorporated or qualified to do business in California.  *Id.* ¶ 11.  None of SEL's officers, directors or employees reside or are domiciled in California.  *Id.* ¶ 12.  SEL has no branch office or comparable facilities in California, and it has no telephone listing or mailing address in California.  *Id.* ¶ 13.  SEL has no bank accounts or other tangible personal or real property in California.  *Id.* ¶ 14.  SEL does not direct any advertising specifically toward California residents, nor does it advertise in any publications that are directed primarily toward California residents; rather, SEL offered its services to anyone in the world through publicly accessible websites.  *Id.* ¶ 15.  SEL's officers, directors and shareholders have not convened in California, and none of its officers, directors or shareholders attend business conferences or similar functions within the state.  *Id.* ¶ 17.  On occasion, non-party SEL has contracted with a U.S.-based vendor to conduct email campaigns related to SEL's business.  Defendant SMS has never engaged this vendor in any capacity.  *Id.* ¶ 18.

### *SocialEnvy.co*

Between January 2015 and February 2018, non-party SEL operated the website SocialEnvy.co, which connected Instagram users with third-party vendors that would increase the user's activity on the platform, thereby increasing the user's visibility.  Hedges Decl. ¶ 20.  SocialEnvy.co did not involve an Instagram user increasing their numbers of "likes" or

4

CASE NO. 3:19-CV-02262 – DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS FOR
LACK OF PERSONAL JURISDICTION AND FORUM NON CONVENIENS

"followers." *Id.*  Neither non-party SEL nor SocialEnvy.co had direct access to any Instagram users' accounts; all account-related activities were conducted by third-party vendors located outside of the U.S. *Id.* ¶ 21.  Non-party SEL voluntarily discontinued SocialEnvy.co in February 2018, following a cease and desist letter from Facebook and Instagram. *Id.* ¶ 25.

### *IGFamous.net*

IGFamous.net was created in January 2016 and owned by SMS.  Pasanen Decl. ¶ 27. IGFamous.net voluntarily ceased operations in or around February 2018, following a cease and desist letter from Facebook and Instagram. *Id.* ¶ 28.  Believing that Facebook and Instagram were alleging a trademark violation related to the letters "IG," IGFamous.net was rebranded to LikeSocial.co to attempt to comply with the cease and desist letter. *Id.*

### D.   Defendants' Use of Instagram

Messrs. Hedges and Pasanen have never had Instagram accounts.  Hedges Decl. ¶ 7; Pasanen Decl. ¶ 8.  Of the Individually Named Defendants, only Mr. Nollen has ever maintained a personal Instagram account, which he opened in or around 2014 and closed in or around 2018. Nollen Decl. ¶ 7.  That Instagram account was strictly for personal use (e.g., posting personal pictures for family and friends) and was in no way affiliated with the SMS or SEL businesses. *Id.*  SMS does not maintain an Instagram or Facebook account and does not advertise on Instagram or Facebook.  Pasanen Decl. ¶ 22.

### E.   Non-Party Entities' Use of Instagram

### *LikeSocial.co*

LikeSocial.co did not maintain an Instagram or Facebook account and did not advertise on Instagram or Facebook.  Pasanen Decl. ¶ 25.

### *Social Envy Limited*

Non-party SEL does not maintain an Instagram or Facebook account and does not advertise on Instagram or Facebook.  Hedges Decl. ¶ 19.

### *IGFamous.net*

IGFamous.net did not maintain an Instagram account.  Pasanen Decl. ¶ 29.

IGFamous.net did maintain a Facebook account from about 2016 to 2018, and also ran limited advertising on Facebook in or around August 2016. *Id.*

### *SocialEnvy.co*

SocialEnvy.co, which was owned and operated by non-party SEL, maintained an Instagram account, which was created in or around January 2015 and closed in or around February 2018. Hedges Decl. ¶ 22. The SocialEnvy.co Instagram account existed solely to increase the company's exposure; the business of SocialEnvy.co (i.e., connecting users with third-party vendors) was never carried out using the SocialEnvy.co Instagram account. *Id.* ¶ 23.

SocialEnvy.co maintained a Facebook account (created in or around January 2015 and closed in or around February 2018) and also advertised on Facebook. Hedges Decl. ¶ 24. These advertisements ran on Facebook from approximately October 2016 to February 2018. *Id.*

**F.      Plaintiffs Facebook and Instagram**

Facebook and Instagram are two of the largest social networking platforms in the world, with an estimated 3.32 billion combined monthly active users.[1] Facebook, a Delaware corporation, is headquartered at 1 Hacker Way, in Menlo Park, CA, and maintains a physical presence around the globe[2] – including an office in Auckland, New Zealand[3]:

---

[1] *See* "Most Popular Social Networks Worldwide as of April 2019, Ranked by Number of Active Users (In Millions)" (found at: https://www.statista.com/statistics/272014/global-social-networks-ranked-by-number-of-users/) (accessed June 7, 2019).
[2] *See* "Facebook Careers – Our Locations" (found at: https://www.facebook.com/careers/locations) (accessed June 7, 2019).
[3] *See* "Facebook Careers – Auckland, New Zealand" (found at: https://www.facebook.com/careers/locations/auckland/?locations%5B0%5D=Auckland%2C+New+Zealand) (accessed June 7, 2019).

(Footnote Continued on Next Page.)



Instagram, a Facebook subsidiary and self-described "global community of more than 1 billion,"[4] is a Delaware corporation headquartered in Menlo Park, California.  Instagram has offices in in San Francisco, New York, and London, and soon will have an office in Tokyo.[5]

**G.**   **Instagram's Terms of Use**

While only one Defendant has ever had an Instagram account (Mr. Nollen's personal, non-commercial account, discussed above), Plaintiffs assert that Instagram's TOU, and the jurisdiction clause contained therein, establish personal jurisdiction over all Defendants.  Compl. ¶ 13.  Because Plaintiffs neglected to include the purportedly critical TOU with the 22 exhibits accompanying their Complaint, Defendants attach a true and correct copy of Instagram's New Zealand[6] TOU as Exhibit A to the Declaration of David Dewar, filed concurrently with this Motion.

The jurisdiction clause in Instagram's TOU reads as follows:

///

---

[4] *See* "Jobs at Instagram – Country Marketing Manager, Japan (found at: https://www.instagram.com/about/jobs/req/a1K2K000007BqUaUAK/) (accessed June 7, 2019).
[5] *See* The Japan Times: "Instagram's First Overseas Development Team to Set up Shop in Tokyo" (found at: https://www.japantimes.co.jp/news/2019/03/15/business/corporate-business/instagrams-first-overseas-development-team-headed-tokyo/#.XPsOYlxKiUk) (accessed June 7, 2019).
[6] References to Instagram's "TOU" or "Terms" in this Motion will refer to the New Zealand TOU, attached to the Dewar Declaration as **Exhibit A**.

7

CASE NO. 3:19-CV-02262 – DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS FOR
LACK OF PERSONAL JURISDICTION AND FORUM NON CONVENIENS

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**How We Will Handle Disputes**

If you are a consumer, the laws of the country in which you reside will apply to any claim, cause of action, or dispute you have against us that arises out of or relates to these Terms ("claim"), and you may resolve your claim in any competent court in that country that has jurisdiction over the claim.  In all other cases, you agree that the claim must be resolved exclusively in the U.S. District Court for the Northern District of California or a state court located in San Mateo County, that you submit to the personal jurisdiction of either of these courts for the purpose of litigating any such claim, and that the laws of the State of California will govern these Terms and any claim, without regard to conflict of law provisions.

Dewar Decl., Exh. A, p.5.

This language differs from Instagram's U.S.[7] Terms, which contain the following jurisdiction clause, quoted in relevant part:

**How We Will Handle Disputes**

For any claim that is not arbitrated or resolved in small claims court, you agree that it will be resolved exclusively in the U.S. District Court for the Northern District of California or a state court located in San Mateo County. You also agree to submit to the personal jurisdiction of either of these courts for the purpose of litigating any such claim.

Norton Decl., Exh. A, p. 5-6.

Notably, the New Zealand Terms differ from the U.S. TOU in their dispensation for "consumers."  The New Zealand Ministry of Business defines "consumer" as "anyone who buys products or services that are ordinarily for personal or household use.  The ordinary use may change over time, eg computers are now commonly used for personal use."[8]

III.     **LEGAL STANDARDS**

A.     **Personal Jurisdiction Standard**

A court may only exercise personal jurisdiction over a non-resident defendant when that exercise comports both with the applicable state long-arm statute and with constitutional principles of due process.  *Dow Chem. Co. v. Calderon*, 422 F.3d 827, 830 (9th Cir. 2005).  California's long-arm statute authorizes courts to "exercise jurisdiction on any basis not

---

[7] A true and correct copy of Instagram's U.S. TOU are attached to the accompanying Declaration of Fred Norton as **Exhibit A**.

[8] *See* https://www.consumerprotection.govt.nz/general-help/consumer-laws/consumer-guarantees-act/#who-is-covered-by-the-cga (Accessed June 5, 2019).

8

inconsistent with the Constitution of . . . the United States." Cal. Code Civ. P. § 410.10 (2018). Thus, the governing standard in California is whether exercise of personal jurisdiction comports with federal due process, which, in turn, requires that the defendant "have certain minimum contacts" with the forum state "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

### B.    Rule 12(b)(2) Motion to Dismiss for Lack of Personal Jurisdiction

Rule 12(b)(2) provides that a court may dismiss a claim for lack of personal jurisdiction. Fed. R. Civ. P. 12(b)(2).  Courts are given "considerable procedural leeway" in deciding a pretrial motion to dismiss for lack of personal jurisdiction, and they may do so on the basis of affidavits alone, permit discovery in aid of the motion, or conduct an evidentiary hearing on the merits. *Dorchester Fin'l Secur., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 84 (2nd Cir. 2013); *Ridgway v. Phillips*, 2019 WL 1746063, at *2 (N.D. Cal. Apr. 18, 2019).

When a defendant moves to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that the court has jurisdiction over the defendant.  *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154 (9th Cir. 2006); *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004).  To make a *prima facie* showing of personal jurisdiction, a plaintiff must produce "facts that if true would support jurisdiction over the defendant." *High Tech Pet Prods., Inc. v. Juxin Pet Prods. Co., Ltd.*, 2013 WL 1281619, at *4 (E.D. Cal. Mar. 27, 2013) (*quoting Harris Rutsky & Co. Inc. Servs., Inc. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1129 (9th Cir. 2003)).

A *prima facie* showing of personal jurisdiction requires "well pled facts," as distinguished from "mere conclusory allegations."  *Id*. (*quoting Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995)).  In other words, "a plaintiff must allege specific acts connecting defendant with the forum to support a finding of jurisdiction." *Greenspun v. Del E. Webb Corp.*, 634 F.2d 1204, 1208, n.5 (9th Cir. 1980).  But the court "may not assume the truth of allegations in a pleading which are contradicted by affidavit." *Data Disc, Inc. v. Sys. Tech. Associates, Inc.*, 557 F.2d 1280, 1284 (9th Cir. 1977).

There are two types of personal jurisdiction: general and specific. *Schwarzenegger*, 374 F.3d at 801-802. For general personal jurisdiction to exist over a nonresident defendant, the defendant must engage in "continuous and systematic general business contacts that approximate physical presence in the forum state." *Id*. at 801 (quotations and citations omitted).

If a foreign defendant's activities within the state are not so pervasive as to justify the exercise of general jurisdiction, the Court may exercise "limited" or "specific" personal jurisdiction, but only if each part of the following three-prong test is satisfied:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Id*. at 802; *see also Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477-478 (1985) ("minimum requirements inherent in the concept of 'fair play and substantial justice' may defeat the reasonableness of jurisdiction even if the defendant has purposefully engaged in forum activities"). The plaintiff bears the burden of satisfying the first two prongs of the specific jurisdiction test; if the plaintiff fails to satisfy either of these prongs, personal jurisdiction is defeated. *Id*. at 802.

The unique burdens on foreign defendants, which arise from having to defend themselves across national borders, are entitled to "significant weight" in assessing reasonableness under the third prong of the specific jurisdiction test. *Asahi Metal Industry Co., Ltd. v. Superior Court*, 480 U.S. 102, 114 (1987); *see also Rano v. Sipa Press, Inc.*, 987 F2d 580, 588 (9th Cir. 1993) (recognizing that "litigation against an alien defendant requires a higher jurisdictional barrier than litigation against a citizen from a sister state").

## C.    *Forum Non Conveniens*

The common law doctrine of *forum non conveniens* allows a court having jurisdiction over the subject matter and parties to decline to exercise its jurisdiction where litigation in the forum would be seriously inconvenient for one of the parties and a more convenient forum is available elsewhere: "At bottom, the doctrine of [*forum non conveniens*] is nothing more or less

10

than a supervening venue provision, permitting displacement of the ordinary rules of venue when, in light of certain conditions, the trial court thinks that jurisdiction ought to be declined." *American Dredging Co. v. Miller*, 510 U.S. 443, 453 (1994). A party moving to dismiss based on *forum non conveniens* must show: (1) there is an adequate alternative forum; and (2) the balance of private and public interest factors favors dismissal. *Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 429 (2007).

In determining whether an alternative forum is "available," it ordinarily is irrelevant that the foreign court may apply substantive law less favorable to the plaintiff unless "the remedy provided … is so clearly inadequate or unsatisfactory that it is no remedy at all." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 254 (1981). An alternate forum is not inadequate simply because it provides a different range of remedies for the same misconduct. *Lockman Found. v. Evangelical Alliance Mission*, 930 F2d 764, 768 (9th Cir. 1991) (Japan is an adequate alternate forum to litigate dispute even if certain claims are not available to plaintiff in Japan).

## IV. DEFENDANTS ARE NOT SUBJECT TO PERSONAL JURISDICTION IN CALIFORNIA

Plaintiffs do not satisfy their burden of proving that minimum contacts exist between Defendants, on the one hand, and California, on the other hand, so as to justify an exercise of personal jurisdiction over Defendants. *Pebble Beach Co.*, 453 F.3d at 1154; *Harris Rutsky & Co.*, 328 F.3d at 1128-29.

### A. Defendants Did Not Consent to Personal Jurisdiction in California

Plaintiffs allege that Defendants submitted to personal jurisdiction in California when they "personally used Instagram [and] their business used thousands of Instagram accounts." Compl. ¶ 13. Though the Complaint contains no specific allegations as to the identity of those alleged accounts, when they were created, or how they were used, Plaintiffs generically allege that anyone who uses an Instagram account must agree to the Instagram TOU, including its jurisdiction clause. *Id*. On that basis, Plaintiffs contend that the Defendants must have consented to jurisdiction in California. *Id*. Plaintiffs' allegations are wrong, and rest on a fundamental mischaracterization of Defendants' business. In fact, Defendants never used

Instagram in the manner Plaintiffs suggest and never submitted to personal jurisdiction in California via the TOU or any other means.

But even if Defendants agreed to Instagram's TOU (they did not), the jurisdiction clause in that agreement in fact requires Instagram to litigate this matter in New Zealand. At the very least, Instagram's TOU jurisdiction clause is ambiguous as to the Individually Named Defendants, and that ambiguity should be both (1) interpreted against Instagram by this Court and (2) ultimately resolved in New Zealand.

### 1. The Individually Named Defendants Did Not Consent to Jurisdiction in California

As to Defendants' alleged "personal[]" use of Instagram (Compl. ¶ 13), of the Individually Named Defendants only Mr. Nollen has ever maintained a personal Instagram account. Nollen Decl. ¶ 7. Thus, as an initial matter, Messrs. Hedges and Pasanen did not "personally use[]" Instagram, as Plaintiffs suggest, did not consent to the Instagram TOU, and cannot be bound by its terms. It is axiomatic, even in the context of internet click-wrap agreements, that a party cannot be bound to the terms of a contract to which it never agreed. *See Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1175 (9th Cir. 2014) ("[w]hile new commerce on the Internet has exposed courts to many new situations, it has not fundamentally changed the principles of contract … [o]ne such principle is the requirement that mutual manifestation of assent, whether by written or spoken word or by conduct, is the touchstone of contract.") (internal citations and quotations omitted). "[T]he Court cannot exercise personal jurisdiction over a nonresident Defendant based on a provision in a contract to which Defendant is not a party." *Wu v. BDK DSD*, 2016 WL 1059534, at *2 (D. Ariz. Mar. 17, 2016).

Regarding Mr. Nollen, his (now closed) Instagram account was strictly for personal use (e.g., posting personal photographs for family and friends) and had ***absolutely nothing to do*** with the commercial misconduct alleged in the Complaint. Nollen Decl. ¶ 7. Mr. Nollen's personal, non-commercial Instagram account cannot, in the interest of fair play and substantial justice, subject him to personal jurisdiction in California to litigate claims that are entirely unrelated to that personal account. *See Rey v. Rey*, 666 F. App'x 675, 676 (9th Cir. 2016) (written

12

agreement's forum selection clause, which encompassed only disputes "stemming from," or "arising under," a written agreement, does not apply to dispute between parties that is unrelated to the agreement); *Bay State Anesthesia, Inc. v. Mallinckrodt, Inc.*, 2002 WL 31761286 (D. Mass. Dec. 6, 2002) (forum selection clause specifying Missouri courts as exclusive forum for any "dispute related to or arising out of" parties' agreement did not apply to suit alleging conduct that was unrelated to the contract's terms and that occurred after the contract was terminated).

In this case, as in *Rey* and *Bay State Anesthesia*, Instagram's forum selection clause relates to disputes "that arise[] out of or relate[] to ***these Terms***." Dewar Decl., Exh. A (emph. added). The purported dispute between Instagram and Mr. Nollen, as described in the Complaint, relates to alleged commercial misconduct by LikeSocial.co. Thus, the dispute is unrelated to the TOU agreement memorializing Mr. Nollen's personal Instagram account, and the forum selection clause related to that personal account cannot form the basis of personal jurisdiction for this dispute. *See Rey*, 666 F. App'x at 676.

Further, even if Mr. Nollen's personal Instagram account subjected him to Instagram's TOU for this commercial dispute (it does not), the Terms ***explicitly require*** Instagram to litigate any dispute it has with Mr. Nollen – a "consumer" – in New Zealand.[9] Indeed, Instagram must litigate its dispute with each of the Individually Named Defendants in New Zealand, as each is a "consumer."

Instagram may present a differing interpretation of the TOU, or disagree that the Terms require Instagram to litigate against the Individually Named Defendants in New Zealand. To the extent that Instagram presents a different interpretation of the jurisdiction clause in its click-wrap, adhesion contract, thereby indicating contractual ambiguity, that ambiguity should be interpreted against Instagram (the drafter) and resolved in New Zealand under the doctrine of

---

[9] *See* TOU at 5 ("If you are a consumer, the laws of the country in which you reside will apply to any claim, cause of action, or dispute you have against us that arises out of or relates to these Terms ("claim"), and you may resolve your claim in any competent court in that country that has jurisdiction over the claim.").

(Footnote Continued on Next Page.)

1   *contra proferentem*.[10]

2        Because the Individually Named Defendants never agreed to the Instagram TOU, they

3   cannot reasonably be haled to California to defend themselves against Instagram's lawsuit.

4   Exercising personal jurisdiction over the Individuals would offend due process and would be

5   inconsistent with traditional notions of fair play and substantial justice.

6              **2.    Defendants Did Not Use "Thousands" of Instagram Accounts in
                      Connection with Their Business**

7

8        As to the purported "thousands" of business Instagram accounts (Compl. ¶ 13), Plaintiffs

9   are similarly misinformed.  When referencing "thousands" of accounts, Plaintiffs are ostensibly

10  referring to the "network of computers or 'bots'" that Plaintiffs allege SMS used to "deliver

11  automated likes to [] customers' Instagram accounts."  Compl. ¶ 1.  However, ***at no time*** did

12  SMS or LikeSocial.co use computers or bots to manipulate or otherwise access Instagram users'

13  accounts; all "likes" and "followers" delivered to user accounts in connection with the

14  LikeSocial.co business were delivered ***exclusively*** by third-party vendors – vendors that are not

15  parties to this lawsuit.[11]  Pasanen Decl. ¶ 21.  Neither SMS nor LikeSocial.co had "thousands" of

16  Instagram accounts, nor did they own or use a "network of computers or 'bots.'"  Pasanen Decl.

17  ¶ 24.  In fact, SMS and LikeSocial.co never maintained a single Instagram account.  *Id*. ¶¶ 22,

18  25.  Of the entities mentioned in the Complaint, only the (now defunct) SocialEnvy.co, operated

19  by non-party SEL, maintained an Instagram account – one, not thousands – and that account

20  never accessed or manipulated Instagram user accounts in any way.  *See* Sect. II, *supra*; Hedges

21  Decl. ¶¶ 21-23.  Because SMS never used or accessed Instagram, it did not agree to the

22  Instagram TOU and never submitted to jurisdiction in California.

23        In sum, the forum selection clause contained in Instagram's TOU cannot form the basis

24  _____

25  [10] *See Mastrobuono v. Sherson Lehman*, 514 U.S. 52, 62 (1995) ("There is a well-established
    common-law rule of contract interpretation that a court should construe ambiguous language
26  against the interest of the party that drafted it."); *World Sav. & Loan Ass'n. v. Fed. Home Loan
    Bank of San Francisco*, 2002 WL 1941155, at *6 (N.D. Cal. Aug. 19, 2002) (*quoting
27  Mastrobuono* and affirming the doctrine of *contra proferentem*).
    [11] Indeed, Defendants have never directly accessed or manipulated Instagram users' accounts in
28  connection with any business or service germane to this Complaint.  *See* Sect. II, *supra*.

14

CASE NO. 3:19-CV-02262 – DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS FOR
LACK OF PERSONAL JURISDICTION AND FORUM NON CONVENIENS

1   of personal jurisdiction over the Defendants.  Three of the four defendants never consented to

2   Instagram's TOU, and the fourth's consent was entirely unrelated to the alleged facts giving rise

3   to this dispute and cannot form the basis of personal jurisdiction here.

### B.   Defendants Do Not Have the Necessary "Continuous and Systematic Contacts" With California to Confer General Jurisdiction

If a foreign defendant engages in "continuous and systematic general business contacts" that "approximate physical presence" in the forum state, a court may exercise general personal jurisdiction.  *Schwarzenegger*, 374 F.3d at 801.  "This is an exacting standard, as it should be, because a finding of general jurisdiction permits a defendant to be haled into court in the forum state to answer for any of its activities anywhere in the world."  *Id.*; *see also Tuazon v. R. J. Reynolds Tobacco Co.*, 433 F.3d 1163, 1169 (9th Cir. 2006) ("The standard for general jurisdiction is high; contacts with a state must approximate physical presence") (internal quotations omitted).

In this case, Defendants had no business contact with California, much less continuous and systematic contacts that would approximate physical presence in the state.[12]  The Individually Named Defendants are New Zealand residents with no connection to California.  *See* Sect. II, *supra*.  Similarly, SMS is a New Zealand company with no presence in, or business ties to, California.  *Id*.

Plaintiffs may argue that general jurisdiction is established here because Defendants' business *relates to* Instagram, a company headquartered in California.  This argument cannot satisfy the "exacting" general jurisdiction standard, which requires that a defendant engage in "continuous and systematic general business contacts that approximate physical presence in the forum state."  *Schwarzenegger*, 374 F.3d at 801.  While SMS's LikeSocial.co business did *relate to* Instagram (in that it offers a service to Instagram users), Plaintiffs cannot credibly allege that

---

[12] Indeed, the only entity with any connection to Defendants that has any business interests or connections in the United States at all is non-party SEL, which has occasionally contracted with a U.S.-based vendor to conduct email campaigns concerning SEL's business, not Defendants'. Hedges Decl. ¶ 18.  As the principles discussed herein make clear, that sporadic, limited engagement with a third-party in the United States would be insufficient to support jurisdiction even against SEL, much less any of the actual Defendants.

15

CASE NO. 3:19-CV-02262 – DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND FORUM NON CONVENIENS

LikeSocial.co had continuous and systematic general business contacts in California that approximate physical presence in the state. *Id*.

Under these circumstances, it would not comport with due process and substantial justice to require the Defendants, who have no contact whatsoever with California, to defend a lawsuit halfway around the world.

**C.**     **Plaintiffs Cannot Establish that Specific Jurisdiction over Defendants Is Proper**

Specific jurisdiction cannot be established in this case, where: (1) Plaintiffs cannot demonstrate that Defendants purposefully directed their activities at California or purposefully availed themselves of the privilege of doing business in California; and (2) Plaintiffs' claims do not arise out of any California-related conduct by Defendants. *Schwarzenegger*, 374 F.3d at 802. Further, given that Defendants have no contacts with California, the exercise of jurisdiction over Defendants would be unreasonable. *Id.*; *see also Burger King Corp.*, 471 U.S. at 476-78 ("minimum requirements inherent in the concept of 'fair play and substantial justice' may defeat the reasonableness of jurisdiction even if the defendant has purposefully engaged in forum activities").

**1.**     **Defendants Have Not Purposefully Availed Themselves of the Privilege to Do Business in California, Nor Purposefully Directed Their Activities Toward California**

Defendants have not purposefully availed themselves of the privilege of doing business in California, nor purposefully directed their activities toward California.

First, purposeful availment is "most often used in suits sounding in contract" and "typically consists of evidence of the defendant's actions in the forum, such as executing or performing a contract there[,]" which demonstrates that the defendant "purposefully avail[ed] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Schwarzenegger*, 374 F.3d at 802 (citations omitted).

Here, Defendants did not purposefully avail themselves of the privilege of conducting business in California because Defendants have taken no actions in California at all.  Plaintiffs may argue that Defendants executed a contract (the TOU) with a California company.  However,

16

CASE NO. 3:19-CV-02262 – DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS FOR
LACK OF PERSONAL JURISDICTION AND FORUM NON CONVENIENS

1  as discussed above, Defendants did not enter into any agreement with Instagram.  *See* Sect. IV.A,

2  *supra*.  Even if Defendants *did* agree to terms with Instagram, they were New Zealand terms,

3  agreed to by New Zealand entities operating exclusively in New Zealand, and related to a

4  globally-available social media platform.  *See* Sect. II, *supra*.  California does not factor in.

5      Second, a showing of purposeful direction "usually consists of evidence of the

6  defendant's actions outside the forum state that are directed at the forum, such as the distribution

7  in the forum state of goods originating elsewhere."  *Schwarzenegger*, 374 F.3d at 803.  Courts

8  evaluate purposeful direction under the three-part "effects" test traceable to the Supreme Court's

9  decision in *Calder v. Jones*.[13]  *Id*.  The *Calder* test "requires that the defendant allegedly have (1)

10  committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the

11  defendant knows is likely to be suffered in the forum state."  *Id*. (*citing Dole Food Co., Inc. v.

12  Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002)).[14]

13      The *Calder* test is not satisfied here.  Neither the Individually Named Defendants, nor

14  SMS, have committed any intentional act that was expressly aimed at California or that caused

15  harm in California.  Plaintiffs will argue that they allege SMS's business, including

16  LikeSocial.co, has damaged Instagram, a social networking platform with 1 billion users, and

17  Facebook, one of the largest public companies in the world.  Defendants deny those assertions,

18  but that is beside the point: no credible reading of the alleged facts suggests Defendants

19  committed an intentional act expressly aimed at California.

20      Plaintiffs have not satisfied the first prong of the specific jurisdiction test.

21      **2.    Plaintiffs' Claims Do Not Arise Out Of, or Result From, Any Alleged
        Forum-Related Activities by Defendants**

22

23      Neither do Plaintiffs satisfy the second prong of the specific jurisdiction test, which

24

25  [13] *Calder v. Jones*, 465 U.S. 783 (1984).

26  [14] The Ninth Circuit has noted that referring to *Calder* as an "effects" test can be misleading.  *See
     Pebble Beach Co*, 453 F.3d at 1156.  For that reason, the Ninth Circuit cautioned courts to not

27  focus too narrowly on the *Calder* test's third prong – the so-called "effects prong" – noting that
     "something more is needed in addition to a mere foreseeable effect."  *Id*. (internal quotations

28  omitted).  In other words, the defendant's alleged conduct must be "expressly aimed" at the
     forum state.  *Id*.

17

CASE NO. 3:19-CV-02262 – DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS FOR
LACK OF PERSONAL JURISDICTION AND FORUM NON CONVENIENS

requires Plaintiffs to demonstrate that their claims arise out of or relate to Defendants' forum-related activities.  *Schwarzenegger*, 374 F.3d at 802.

Plaintiffs assert claims for: <u>breach of contract</u> (for Defendants' alleged violation of Instagram's TOU); <u>computer hacking</u> under California Penal Code § 502 and the federal Computer Fraud and Abuse Act, 18 U.S.C. § 1030 (for allegedly accessing and using Instagram and Facebook's computers without authorization, resulting in damage to Facebook and Instagram); and <u>unjust enrichment</u> at Plaintiffs' expense.

Plaintiffs do not – and indeed cannot – demonstrate that these claims arise out of Defendants' California-related activities, because Defendants **have no California-related activities**.  *See* Sect. II, *supra*.  As discussed above, Defendants live, and their business operates, exclusively in New Zealand.  They have no business or personal contacts with California, much less contacts that give rise to Plaintiffs' claims.  Plaintiffs allege that Defendants breached Instagram's TOU, but they cannot credibly allege that the purported breach had anything to do with California-related activity by Defendants.  Plaintiffs allege that Defendants accessed their computer networks without authorization, but Defendants never accessed the Instagram computer network in any way that relates to the allegations in the Complaint (or at all).  The misconduct alleged in the Complaint (e.g., using "bots" to manipulate individual Instagram accounts) was not conduct by Defendants in any event, but if true, was conduct exclusively by third-party vendors outside of the U.S.  Finally, any alleged unjust enrichment on the part of Defendants relates exclusively to their activities in New Zealand, and in no way relates to actions taken by Defendants in California (of which there are none).  Plaintiffs have not satisfied the second prong of the limited jurisdiction test.

### 3. <u>Exercising Jurisdiction Over Defendants Would Be Unreasonable</u>

Finally, it would be unreasonable to subject Defendants to jurisdiction in California.  The unique burdens on foreign defendants, which arise from having to defend themselves across national borders, are entitled to "significant weight" in assessing reasonableness.  *Asahi Metal Industry Co.*, 480 U.S. at 114; *Rano*, 987 F2d at 588 (recognizing that "litigation against an alien defendant requires a higher jurisdictional barrier than litigation against a citizen from a sister

18

CASE NO. 3:19-CV-02262 – DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS FOR
LACK OF PERSONAL JURISDICTION AND FORUM NON CONVENIENS

state").

In *Core-Vent Corp. v. Nobel Industries AB*, 11 F.3d 1482, 1487-88 (9th Cir. 1993), the Ninth Circuit identified seven factors that a court should consider when determining whether the exercise of jurisdiction over a defendant comports with "fair play and substantial justice." None of the seven factors are dispositive in themselves, but instead, a court should balance all seven factors. *Id.* These factors are:

> (1) The extent of the defendants' purposeful interjection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendants' state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum.

*Id.*

### (1) Purposeful Interjection

"[T]he smaller the element of purposeful interjection, the less is jurisdiction to be anticipated and the less reasonable is its exercise." *Core-Vent*, 11 F.3d at 1488 (citation omitted). As discussed above, Defendants have not purposefully interjected themselves into California's affairs. The Individually Named Defendants and SMS have nothing at all to do with California.

### (2) Burden on Defendants

"The law of personal jurisdiction is asymmetrical and is primarily concerned with the defendant's burden." *Terracom v. Valley Nat'l Bank*, 49 F.3d 555, 561 (9th Cir. 1995). In cases with overseas defendants, "[t]he unique burdens placed upon one who must defend oneself in a foreign legal system should have significant weight in assessing the reasonableness of stretching the long arm of personal jurisdiction over national borders." *Asahi*, 480 U.S. at 114.

Defending this case in California would be a tremendous burden on Defendants. The Individuals and SMS are all located in New Zealand. Forcing Defendants to make the 12+ hour trip from New Zealand to San Francisco to participate in this litigation would place a ruinous financial and emotional burden on Defendants, and the nineteen-hour time difference between California and New Zealand would interfere with the ability of the Defendants to communicate

19

CASE NO. 3:19-CV-02262 – DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS FOR
LACK OF PERSONAL JURISDICTION AND FORUM NON CONVENIENS

1   effectively with California counsel.  *See Core-Vent*, 11 F.3d at 1494 (burdensome travel

2   requirements weigh against finding personal jurisdiction).  The burden is especially unfair given

3   that Facebook maintains an office in New Zealand and could easily litigate this matter in

4   Defendants' home country.

5                    **(3) Conflict with Sovereignty**

6        The third factor, conflict with the sovereignty of a defendant's state, requires an

7   examination of the competing sovereign interests in adjudicating the dispute.  *Dole Food*, 303

8   F.3d at 1115.  "Great care and reserve should be exercised when extending our notions of

9   personal jurisdiction into the international field."  *Asahi*, 480 U.S. at 115 (*quoting United States*

10  *v. First National City Bank*, 379 U.S. 378, 404 (1965)).  The United States' relations with other

11  nations are "best served by a careful inquiry into the reasonableness of the [] assertion of

12  jurisdiction, and an unwillingness to find an alien defendant's serious burdens outweighed where

13  [] the interests of the plaintiff and the forum State are minimal."  *Id*.  Litigation against an alien

14  defendant creates "a higher jurisdictional barrier than litigation against a citizen from a sister

15  state because important sovereignty concerns exist."  *Core-Vent*, 11 F.3d at 1489.

16       Sovereignty concerns weigh more heavily when the defendants have no United States-

17  based relationships.  *Core-Vent*, 11 F.3d at 1489 (because foreign defendants had no U.S.-based

18  relationships, the sovereignty factor weighed heavily in the foreign defendants' favor"); *see also*

19  *Asahi*, 480 U.S. at 112–13 (absence of agent or subsidiary in the United States enhanced

20  sovereignty concerns); *FDIC v. British–American Ins. Co.*, 828 F.2d 1439, 1444 (9th Cir.1987)

21  (absence of officer, affiliate or subsidiary in United States significant in evaluating sovereignty

22  concerns).

23       In this case, the Individually Named Defendants are citizens of New Zealand and SMS is

24  a corporation organized under the laws of, and headquartered in, New Zealand.  *See* Sect. II,

25  *supra*.  New Zealand has an interest in assuring that disputes involving its citizens and domestic

26  corporations – especially those with no relationship to the foreign jurisdiction to which they've

27

28

20

CASE NO. 3:19-CV-02262 – DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS FOR
LACK OF PERSONAL JURISDICTION AND FORUM NON CONVENIENS

1   been haled – are fairly adjudicated in courts convenient to its citizens.[15]  For this Court to assume

2   jurisdiction would impinge New Zealand's sovereignty.

3              **(4)  Forum State's Interest**

4              In contrast, California has little or no interest in adjudicating this dispute.  While

5   Plaintiffs have their headquarters in California, the claim itself arises from alleged conduct that

6   took place in New Zealand by New Zealanders.  The LikeSocial.co website, over which

7   Plaintiffs have sued, is produced and emanates from New Zealand.  The Individually Named

8   Defendants live, and SMS is headquartered and operates, in New Zealand.  To the extent that

9   SMS's third-party vendors are relevant to Plaintiffs' claims, those third-party vendors are located

10  outside of the U.S.

11             **(5)  Efficient Resolution of the Controversy**

12             In evaluating this factor, courts look primarily to "where the witnesses and the evidence

13  are likely to be located."  *Core-Vent*, 11 F.3d at 1489.  The witnesses and the evidence in this

14  case are in New Zealand.  The most efficient venue to resolve this case is New Zealand,

15  especially so since Facebook is also located in New Zealand.

16             **(6)  Plaintiffs' Interest in Convenient and Effective Relief**

17             Litigating this matter in New Zealand will not diminish Plaintiffs' ability to seek

18  convenient and effective relief.  The pertinent witnesses and evidence are in New Zealand, and

19  Facebook has a physical presence in New Zealand.  Nothing suggests that pursuing relief in New

20  Zealand would be any less convenient or effective for Plaintiffs than litigating in California.

21             Regardless, inconvenience to the plaintiff is an "insignificant" factor in the

22  reasonableness analysis; according to the Ninth Circuit in *Core-Vent*: "neither the Supreme

23  ─────────────────────

24  [15] Further, New Zealand has a particular interest in adjudicating this dispute, which raises legal
    issues that are unresolved in that country.  Specifically, New Zealand courts have not yet
25  decided, in the first instance: (1) whether a click-wrap agreement such as Instagram's TOU
    creates enforceable obligations; (2) whether an adhesion click-wrap agreement, even if otherwise
26  enforceable, can include a consent to jurisdiction in a foreign forum; (3) whether the one-sided
    nature of Instagram's TOU, and specifically its dispute resolution procedures, makes it
27  unconscionable; (4) whether the severability clause would be enforced if the overall agreement
    were unconscionable; and (5) whether Instagram can use Mr. Nollen's personal Instagram
28  account to justify imposing jurisdiction in an unrelated commercial dispute with an entity he
    arguably controls.  Dewar Decl. ¶ 5.

21

1  Court nor our court has given much weight to inconvenience to the plaintiff … no doctorate in

2  astrophysics is required to deduce that trying a case where one lives is almost always a plaintiff's

3  preference … [but a] mere preference on the part of the plaintiff for its home forum does not

4  affect the balancing." *Core-Vent Corp.*, 11 F.3d at 1490.

5          **(7) <u>Existence of an Alternative Forum</u>**

6          Plaintiffs bear the burden of proving that an alternative forum is unavailable, and their

7  preference is not the test. *Core-Vent*, 11 F.3d at 1490. As discussed more fully in Section V

8  below, New Zealand is an adequate – and indeed, better – forum to litigate this case. The parties,

9  witnesses, and evidence are in New Zealand and threshold jurisdictional questions turn on the

10  court's interpretation of New Zealand's consumer protection framework.

11          In sum, the *Core-Vent* factors suggest that exercising jurisdiction over Defendants in this

12  case would be unreasonable. Given that, and also given that Defendants have not purposefully

13  availed themselves of California nor directed any actions toward California resulting in harm to

14  Plaintiffs, the Court should decline to exercise specific jurisdiction in this case.

15        **D.**     **<u>Even If Social Media Series Limited Were Subject to Personal Jurisdiction in</u>**

16                 **<u>This Court, the Individually Named Defendants Are Not Subject to Personal</u>**
               **<u>Jurisdiction in California</u>**

17          Even if SMS were subject to personal jurisdiction (and for the reasons stated above, it is

18  not), SMS's directors – the Individually Named Defendants – are not automatically subject to

19  personal jurisdiction in California. The mere fact that a corporation is subject to local

20  jurisdiction does not mean its nonresident officers, directors, agents, and employees are suable

21  locally as well. *Calder*, 465 U.S. at 790 (1984) (a defendant's contacts with forum state are not

22  to be judged according to her employer's activities there); *Davis v. Metro Productions, Inc.*, 885

23  F2d 515, 521 (9th Cir. 1989) (same); *Smith v. Antler Insanity, LLC*, 58 F.Supp.3d 716, 722 (S.D.

24  Miss. 2014) (members of limited liability company not subject to personal jurisdiction in forum

25  state simply because LLC subject to jurisdiction there).

26          Here, even if the Court determines that personal jurisdiction over SMS is proper, it may

27  not automatically make the same determination regarding SMS's directors. The misconduct

28

alleged in the Complaint relates exclusively to SMS and its operation of LikeSocial.co and related websites. Given that, the Individually Named Defendants' only plausible relationship to the alleged misconduct in the Complaint – and their only conceivable contact with California – is through their positions as shareholders and directors of SMS. But a nonresident individual is not subject to personal jurisdiction based solely upon acts in the forum state undertaken in his or her corporate capacity. *See Calder*, 465 U.S. at 790.

## V.   PLAINTIFFS' COMPLAINT SHOULD BE DISMISSED BASED ON THE DOCTRINE OF *FORUM NON CONVENIENS*

In the event this Court finds personal jurisdiction over Defendants, it should still dismiss this action based on the common law doctrine of *forum non conveniens*. This doctrine applies when a defendant is a foreign entity, and allows a court, having jurisdiction over the subject matter and parties, to decline to exercise that jurisdiction where litigation in the forum would be seriously inconvenient for one of the parties and a more convenient forum is available elsewhere. *American Dredging Co.*, 510 U.S. at 448. A party moving to dismiss on grounds of *forum non conveniens* must show that there is an adequate alternative forum and that the balance of private and public interest factors favors dismissal. *Sinochem Int'l Co. Ltd.*, 549 U.S. at 429; *Piper Aircraft*, 454 U.S. at 238. Both elements are satisfied in this case.

### A.   New Zealand Is an Adequate Alternative Forum

The first requirement is that an alternative forum be available in the foreign country. This requires that the defendant be amenable to service of process there. *See Piper*, 454 U.S. at 254. A defendant's agreement to submit to the personal jurisdiction of the foreign country satisfies this requirement. *Lockman Found.*, 930 F.2d at 768.

In determining whether an alternative forum is "available," it ordinarily is irrelevant that the foreign court may apply substantive law less favorable to the plaintiff, unless "the remedy provided … is so clearly inadequate or unsatisfactory that it is no remedy at all." *Piper*, 454 U.S. at 254 (fact that Scotland does not recognize products liability claim did not constitute "no remedy" because negligence recovery possible); *see Ranza v. Nike, Inc.*, 793 F.3d 1059, 1078 (9th Cir. 2015) (Netherlands an adequate forum since "some remedy" provided, although less

23

CASE NO. 3:19-CV-02262 – DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND FORUM NON CONVENIENS

1    generous than under U.S. law).  A foreign forum will be deemed adequate unless it offers no

2    practical remedy for the plaintiff's claimed wrong.  *Piper*, 454 U.S. at 254 (There may be "rare

3    circumstances" in which the "remedy provided by the alternative forum is so clearly inadequate

4    or unsatisfactory that it is no remedy at all"); *Lueck v. Sundstrand Corp.*, 236 F.3d 1137, 1144

5    (9th Cir. 2001) (district court did not abuse its discretion in finding that an adequate remedy is

6    available in New Zealand).

7         In this case, New Zealand undoubtedly offers an adequate alternate forum.  Plaintiffs

8    could seek the same remedies in New Zealand that they seek in California.  Dewar Decl. ¶ 6.

9    There is nothing to suggest that a New Zealand court would offer an inadequate, unsatisfactory,

10   or meaningfully different remedy to Plaintiffs than the remedy they could obtain in California.

11        **B.    Private and Public Interest Factors Favor Litigating This Matter in New Zealand**

12

13             **1.    The Private Interest Factors Favor New Zealand**

14        Given the existence of an adequate alternative forum, a district court must consider the

15   balance of private and public interest factors to determine whether to dismiss on grounds of

16   *forum non conveniens*.  *Lockman*, 930 F.2d at 769.  "Private interest factors include: ease of

17   access to sources of proof; compulsory process to obtain the attendance of hostile witnesses, and

18   the cost of transporting friendly witnesses; and other problems that interfere with an expeditious

19   trial."  *Id*. (internal quotations omitted).  Where a majority of witnesses and documents are

20   located in an alternate forum, the action should be litigated there.  *Creative Tech., Ltd. v. Aztech

21   Sys. Pte., Ltd.*, 61 F.3d 696, 703 (9th Cir. 1995) (dismissal upheld in copyright infringement suit

22   where the primary parties, the key infringing conduct, and the bulk of the witnesses are located

23   in a foreign jurisdiction).  As discussed above in relation to Defendants' 12(b)(2) Motion, all

24   witnesses, documents, and Defendants are located in New Zealand.  Plaintiff Facebook is also

25   located in New Zealand.  The private interest factors strongly favor New Zealand.

26             **2.    The Public Interest Factors Favor New Zealand**

27        Public interest factors include: (1) administrative difficulties flowing from court

28   congestion; (2) imposition of jury duty on the people of a community that has no relation to the

24

litigation; (3) local interest in having localized controversies decided at home; (4) the interest in having a diversity case tried in a forum familiar with the law that governs the action: (5) the avoidance of unnecessary problems in conflicts of law.  *Creative Tech.*, 61 F.3d at 703-04. These factors also weigh in favor of dismissal.  This dispute is not localized to the Northern District of California, such that litigating in San Francisco would serve the local interest.  Given that Plaintiffs could bring their claims in a New Zealand court, California is not individually situated as the forum that must resolve this dispute.  Finally, given the nature of this case and court congestion in the Northern District of California, the Court should not hesitate to direct Plaintiffs to file suit in New Zealand.

### 3.    The Balance of Conveniences Favors Dismissal

Plaintiffs may argue that their choice of forum should not be disturbed, because to do so would deprive California companies of litigating in their home state.  While a plaintiff's choice of forum may often be respected, "[t]he deference due to plaintiff[]…is far from absolute." *Lockman*, 930 F.2d at 767.  As the Supreme Court noted, "[a] citizen's forum choice should not be given dispositive weight . . . [I]f the balance of conveniences suggests that trial in the chosen forum would be unnecessarily burdensome for the defendant or the court, dismissal is proper." *Piper Aircraft*, 454 U.S. at 256, n.23.  The balance of convenience in this case favors New Zealand.  It would be a tremendous burden and an unfair result to require three New Zealand citizens and one New Zealand company to defend this claim in California against one of the largest companies in the world – a company that maintains a physical presence in Defendants' home country.

## VI.    CONCLUSION

For the foregoing reasons, Defendants respectfully request that their motion to dismiss be granted in its entirety.

Dated: June 12, 2019                **THE NORTON LAW FIRM PC**


By: _____
         */s/ Fred Norton*
        Fred Norton
        *Attorneys for Defendants*

25

CASE NO. 3:19-CV-02262 – DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS FOR
LACK OF PERSONAL JURISDICTION AND FORUM NON CONVENIENS