Ann Marie Mortimer (State Bar No. 169077)
amortimer@HuntonAK.com
Jason J. Kim (State Bar No. 221476)
kimj@HuntonAK.com
**HUNTON ANDREWS KURTH LLP**
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627
Telephone:  (213) 532-2000
Facsimile:  (213) 532-2020

Attorneys for Plaintiffs
FACEBOOK, INC. and INSTAGRAM, LLC

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| FACEBOOK, INC., a Delaware corporation and INSTAGRAM, LLC, a Delaware limited liability company,<br><br>Plaintiffs,<br><br>v.<br><br>AREND NOLLEN, LEON HEDGES, DAVID PASANEN, and SOCIAL MEDIA SERIES LIMITED,<br><br>Defendants. | CASE NO.:  3:19-CV-02262-WHO<br><br>**FACEBOOK, INC. AND INSTAGRAM, LLC'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND *FORUM NON CONVENIENS***<br><br>[Filed concurrently with Declarations of Jason J. Kim and Michelle Chan]<br><br>Date:        August 7, 2019<br>Time:        2:00 p.m.<br>Location:    Courtroom 2 |

**Hunton Andrews Kurth LLP**
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

**TABLE OF CONTENTS**

I.     INTRODUCTION ................................................................................................1

II.    STATEMENT OF FACTS ...................................................................................2

       A.    Facebook and Instagram ..........................................................................2

       B.    Defendants' Fake Engagement Activity ...................................................2

       C.    Defendants' Declarations in Support of their Motion..............................3

       D.    Defendants' Accounts ..............................................................................4

III.   THIS COURT HAS JURISDICTION OVER DEFENDANTS .........................6

       A.    Defendants Consented to Personal Jurisdiction under the Instagram TOU.................7

       B.    Specific Personal Jurisdiction Exists ....................................................10

             1.    Purposeful direction ....................................................................10

             2.    Plaintiffs' claims arise out of Defendants' forum-related activities ...............13

             3.    The exercise of jurisdiction is not unreasonable .........................13

       C.    Alternatively, Plaintiffs Should Be Entitled To Conduct Jurisdictional Discovery ...............16

IV.    THE COURT SHOULD DENY DISMISSAL FOR *FORUM NON CONVENIENS*.............17

       A.    Defendants Waived Their Right to Challenge the Convenience of this Forum .........18

       B.    Defendants Otherwise Have Not Met Their Burden to Obtain Dismissal.................19

             1.    Defendants have not established New Zealand is an adequate alternative forum...............19

             2.    The private and public interest factors favor litigation in California.............20

V.     CONCLUSION.................................................................................................22

**Hunton Andrews Kurth LLP**
**550 South Hope Street, Suite 2000**
**Los Angeles, California 90071-2627**

FACEBOOK, INC. AND INSTAGRAM, LLC'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FOR
LACK OF PERSONAL JURISDICTION AND *FORUM NON CONVENIENS*

1

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*AAR Int'l, Inc. v. Nimelias Enters. S.A.,*
   250 F.3d 510 (7th Cir. 2001) ...................................................................................18

*Abbott Labs. v. Takeda Pharm. Co.,*
   476 F.3d 421 (7th Cir. 2007) ...................................................................................19

*Atl. Marine Const. Co. v. U.S. Dist. Court for Western Dist. of Texas,*
   571 U.S. 49, 63 (2013)........................................................................................18, 22

*Ballard v. Savage,*
   65 F.3d 1495 (9th Cir. 1995) ................................................................................6, 15

*Bancroft & Masters, Inc. v. Augusta Nat'l Inc.,*
   223 F.3d 1082 (9th Cir. 2000) .................................................................................10

*Barry v. Society of Lloyd's,*
   3 F.3d 156 (7th Cir. 1993) ........................................................................................19

*Boston Telecommunications Group, Inc. v. Wood,*
   588 F.3d 1201 (9th Cir. 2009) ............................................................................17, 21

*Brayton Purcell LLP v. Recordon & Recordon,*
   575 F.3d 981 (9th Cir. 2009) ....................................................................................10

*Burger King Corp. v. Rudzewicz,*
   471 U.S. 462 (1985)..................................................................................................10

*Calder v. Jones,*
   465 U.S. 783 (1984)............................................................................................10, 11

*Carijano v. Occidental Petroleum Corp.,*
   643 F.3d 1216 (9th Cir. 2011) ................................................................17, 19, 21, 22

*CollegeSource, Inc. v. AdademyOne, Inc.,*
   653 F.3d 1066 (9th Cir. 2011) .....................................................................10, 12, 13

*Core-Vent Corp. v. Nobel Industries AB,*
   11 F.3d 1482 (9th Cir. 1993) ....................................................................................15

*Costal Steel Corp. v. Tilghman Wheelabrator Ltd.,*
   709 F.2d 190 (3d Cir 1983)........................................................................................7

*Costco Wholesale Corp. v. Liberty Mut. Ins. Co.,*
   472 F. Supp. 2d 1183 (S.D. Cal. 2007)....................................................................20

**Hunton Andrews Kurth LLP**
**550 South Hope Street, Suite 2000**
**Los Angeles, California 90071-2627**

FACEBOOK, INC. AND INSTAGRAM, LLC'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FOR
LACK OF PERSONAL JURISDICTION AND *FORUM NON CONVENIENS*

*Data Disc, Inc. v. Systems Technology Associates, Inc.*,
   557 F.2d 1280 (9th Cir. 1977) .................................................................................16

*Doe v. Uber Techs., Inc.*,
   2017 U.S. Dist. LEXIS 83462 (N.D. Cal. May 31, 2017) ........................................22

*Dole Food Co. v. Watts*,
   303 F.3d 1104 (9th Cir. 2002) ........................................................................*passim*

*Dolin v. Facebook, Inc.*,
   289 F. Supp. 3d 1153 (D. Haw. Feb. 6, 2018) .........................................................8

*Ebay Inc. v. Dig. Point Sols., Inc.*,
   2009 U.S. Dist. LEXIS 80335 (N.D. Cal. Aug. 17, 2009) ......................................18

*In re Facebook Biometric Info. Privacy Litig.*,
   185 F. Supp. 3d 1155 (N.D. Ca. May 5, 2016) ........................................................7

*In re Facebook, Inc. S'holder Derivative Privacy Litig.*,
   367 F. Supp. 3d 1108 (N.D. Cal. 2019) ..................................................................18

*Franklin v. Facebook, Inc.*,
   2015 WL 7755670 (N.D. Ga. Nov. 24, 2015) ..........................................................8

*Fteja v. Facebook, Inc.*,
   841 F. Supp. 2d 829 (S.D.N.Y. Jan. 24, 2012) .....................................................7, 8

*Gates Learjet Corp. v. Jensen*,
   743 F.2d 1325 (9th Cir. 1984) ............................................................17, 18, 19, 22

*Giotta v. Ocwen Fin. Corp.*,
   2015 WL 8527520 (N.D. Cal. Dec. 11, 2015) ........................................................10

*Gulf Oil Corp v. Gilbert*,
   330 U.S. 501 (1947) ................................................................................................20

*Hayes v. Facebook, Inc. et al.*,
   Case No. 18-cv-02333-MEH, Doc. 54 (D. Col. Mar. 6, 2019) ................................7

*Heller Fin., Inc. v. Midwhey Powder Co.*,
   883 F.2d 1286 (7th Cir. 1989) ................................................................................20

*Holland Am. Line Inc. v. Wartsila N. Am., Inc.*,
   485 F.3d 450 (9th Cir. 2007) ................................................................................7, 9

*Lake v. Lake*,
   817 F.2d 1416 (9th Cir. 1987) ................................................................................10

*Learjet Inc. v. Oneok, Inc.*,
   715 F.3d 716 (9th Cir. 2013) ..................................................................................13

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

FACEBOOK, INC. AND INSTAGRAM, LLC'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FOR
LACK OF PERSONAL JURISDICTION AND *FORUM NON CONVENIENS*

*Maneti-Farrow, Inc. v. Gucci America, Inc.*,
 858 F.2d 509 (9th Cir. 1988) ............................................................................7, 9

*MGM Studios Inc. v. Grokster, Ltd.*,
 243 F. Supp. 2d 1073 (C.D. Cal. Jan. 8, 2003) ...........................................................11

*Nibirutech Ltd v. Jang*,
 75 F. Supp. 3d 1076 (N.D. Cal. 2014) .......................................................................17

*Panavision, Intern., L.P. v. Toeppen*,
 141 F.3d 1316 (9th Cir. 1998) ...............................................................................14

*Paper Express. Ltd. v. Pfankuch Maschinen GmbH*,
 972 F.2d 753 (7th Cir. 1992) .................................................................................18

*Piper Aircraft Co. v. Reyno*,
 454 U.S 235 (1981)..............................................................................................18

*Ranza v. Nike, Inc.*,
 793 F.3d 1059 (9th Cir. 2015) ................................................................................6

*Roth v. Garcia Marquez*,
 942 F.2d 617 (9th Cir. 1991) .................................................................................13

*Schwarzenegger v. Fred Martin Motor Co.*,
 374 F.3d 797 (9th Cir. 2003) .......................................................................6, 9, 10, 11

*Sinatra v. Nat'l Enquirer*,
 854 F.2d 1191 (9th Cir. 1988) ...............................................................................14

*The Bremen v. Zapata Off-Shore Co.*,
 407 U.S. 1 (1972)..................................................................................................7

*Thomas v. Facebook, Inc.*,
 Case No. 18-cv-00856-LJO-BAM, Doc. 14 (E.D. Cal. Aug. 15, 2018)................................8

*Tuazon v. R.J. Reynolds Tobacco Co.*,
 433 F.3d 1163 (9th Cir. 2006) ...............................................................................21

*Walker v. Carnival Cruise Lines, Inc.*,
 1987 U.S. Dist. LEXIS 12716 (N.D. Ill. Dec. 22, 1987) ...............................................19

*Warner Bros. Entm't, Inc. v. Free-TV-Video-Online.Info*,
 2009 WL 10673279 (C.D. Cal. June 24, 2009) ..........................................................11

*Yahoo! Inc. v. La Ligue Contre Le Racisme et L'Antisemitisme*,
 145 F. Supp. 2d 1168 (N.D. Cal. Jun. 7, 2001)..........................................................15

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

FACEBOOK, INC. AND INSTAGRAM, LLC'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FOR
LACK OF PERSONAL JURISDICTION AND *FORUM NON CONVENIENS*

1

**Statutes**

2

18 U.S.C. § 1030 ..................................................................................................1, 21

3

California Penal Code § 502 .................................................................................1, 21

4

Fed. R. Civ. Proc. 12(b)(2) ........................................................................................6

5

New Zealand Criminal Procedure Act 2011 § 374 ....................................................21

6

New Zealand Senior Courts Act 2016, § 15 ........................................................16, 21

7

New Zealand Senior Courts Act 2016, § 16 ........................................................16, 21

8

New Zealand Senior Courts Act 2016, § 41 ..............................................................21

9

10

11

**Hunton Andrews Kurth LLP**
**550 South Hope Street, Suite 2000**
**Los Angeles, California 90071-2627**

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FACEBOOK, INC. AND INSTAGRAM, LLC'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FOR
LACK OF PERSONAL JURISDICTION AND *FORUM NON CONVENIENS*

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

On April 25, 2019, Plaintiffs Facebook, Inc. ("Facebook") and Instagram, LLC ("Instagram") filed a civil action against Defendants for breach of contract, unjust enrichment, and violations of California Penal Code Section 502 and 18 U.S.C. § 1030.  Doc. # l.  The complaint details a scheme by Defendants to misappropriate and manipulate the computer network, software, and social media platform of two California citizens—Plaintiffs Facebook and Instagram.  In the complaint, Plaintiffs assert that this Court has personal jurisdiction over Defendants, first, because each Defendant agreed to Instagram's Terms of Use ("TOU"), which require Defendants to submit to the personal jurisdiction of this Court.  Doc. # 1 at 4.  And second, because Defendants knowingly directed their actions at Facebook and Instagram, which have their principal place of business in California.  *Id.*

On June 12, 2019, Defendants filed a motion to dismiss for lack of personal jurisdiction and *forum non conveniens*.  Doc. # 23.  Defendants' motion is based primarily on two arguments, neither of which has merit.  *First*, Defendants claim they never assented to Instagram's TOU.  Doc. # 23 at 8. As set forth below, that is inaccurate.  *Second*, Defendants claim they are shielded from this Court's jurisdiction because they used "third-party vendors" to set up fake Instagram accounts and deliver fake Instagram "likes" and other engagement services to their customers.  Doc. # 23 at 7 and 20.  Even if the Court needed to reach this question (and it does not in light of Defendants' consent to the TOU), Defendants' untested claim is legally irrelevant.  There is no question Defendants purposefully directed their tortious activities at two California Plaintiffs.  Indeed, Defendants' entire business model depends on the use and manipulation of the social media platform and assets of two California Plaintiffs.  The only service Defendants market is the sale of "AUTOMATIC LIKES ON YOUR INSTAGRAM POSTS," and they admit their service exists only "to drive traffic to your [Instagram] account."  Doc. # 1, Exhs. 13 and 14.  In their own words, Defendants do so by "creat[ing] real looking Instagram accounts" to automatically deliver the fake "likes."  Kim Decl. ¶ 3, Exh. B.

Defendants consented to resolving this dispute in this Court, and they acknowledged that their entire business model depends on the illicit usage and manipulation of the assets of two California

FACEBOOK, INC. AND INSTAGRAM, LLC'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FOR
LACK OF PERSONAL JURISDICTION AND *FORUM NON CONVENIENS*

1    citizens.   Therefore, there is no question this Court has jurisdiction over Defendants. Their motion

2    should be denied in its entirety.

3    **II.    STATEMENT OF FACTS**

4       **A.    Facebook and Instagram**

5          Facebook is a social networking website and mobile application that enables its users to create

6    their own personal profiles and connect with each other on their personal computers and mobile

7    devices.  Doc. # 1 ¶ 17.  Instagram is a photo and video sharing service, mobile application, and social

8    network.  *Id.* ¶ 18.  Instagram users can post photos and videos to their profile.  *Id.*  They can also

9    view, comment on, and like posts shared by others on Instagram.  *Id.*  Every person who registers for

10   and uses a Facebook or Instagram account must agree to Facebook and Instagram's respective terms

11   of use.  As part of the user-registration process, any person who wishes to use Facebook or Instagram

12   is required to acknowledge that they have read and agreed to Facebook and/or Instagram's terms.  *Id.*

13   ¶ 21.

14          The applicable Instagram TOU[1] contains a forum selection and choice of law clause, which

15   reads (emphasis added):

16          If you are a consumer, the laws of the country in which you reside will apply to any
             claim, cause of action, or dispute *you have against us* that arises out of or relates to
17          these Terms ("claim"), and you may resolve your claim in any competent court in that
             country that has jurisdiction over the claim.  ***In all other cases, you agree that the***
18          ***claim must be resolved exclusively in the U.S. District Court for the Northern District***
             ***of California*** or a state court located in San Mateo County, that *you submit to the*
19          *personal jurisdiction of either of these courts for the purpose of litigating any such*
             *claim*, and that the laws of the State of California will govern these Terms and any
20          claim, without regard to conflict of law provisions.

21

22      **B.    Defendants' Fake Engagement Activity**

23          As set forth in the complaint, since July 2015, Defendants have operated various websites

24   offering  fake  engagement  services  including  <u>SocialEnvy.co</u>,  <u>IGFamous.net</u>,  and  <u>Likesocial.co</u>,

25   requiring Plaintiffs to take multiple enforcement actions against them.  Doc. # 1 ¶¶ 24-27, 31, Exhs.

26   12-14.  Since February 2018, Plaintiffs have sent multiple cease and desist letters to Defendants, and

27

28   _____
     [1] Plaintiffs do not dispute that the applicable terms are those shown in the Dewar Declaration, Doc. #
     23-4.

**Hunton Andrews Kurth LLP**
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

FACEBOOK, INC. AND INSTAGRAM, LLC'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FOR
LACK OF PERSONAL JURISDICTION AND *FORUM NON CONVENIENS*

disabled Instagram accounts associated with Defendants and their fake engagement services.  Doc. # 1 ¶¶ 28, 32, Exhs. 15 and 16.

Starting in July 2018, Defendants marketed their fake engagement services and conducted financial transactions with their customers through the website Likesocial.co.  Doc. # 1 ¶ 35, Exhs. 18 and 19.  Defendants offered "automatic Instagram likes" using a "system [that] monitors your Instagram account 24/7 and detects your latest posts within seconds.  Instagram Likes start delivering to your post immediately after it is detected."  Doc. # 1, Exh. 20.

Defendants used a network of computer bots and Instagram accounts to deliver millions of automated and fake likes on Instagram.  Doc. # 1 ¶ 38.  Indeed, Defendants boasted of their ability to "create[] real looking Instagram accounts" to deliver the fake likes.  Kim Decl. ¶ 3, Exh. B.  Defendants used California-based PayPal to accept payments for their services.  Doc. # 1 ¶¶ 36-37; Kim Decl. ¶¶ 2 and 3, Exhs. A and B.  Since July 2018, Defendants have unjustly enriched themselves at the expense of Facebook and Instagram in the amount of approximately $9,430,000.  *Id.* ¶ 44.  Plaintiffs have suffered substantial harm as a result of Defendants' interference with Instagram's service and computer network, as set forth in the complaint.  *Id.* ¶¶ 41-44.

## C.   Defendants' Declarations in Support of Their Motion

Each individual defendant filed a declaration in support of their motion to dismiss.  Doc. # 23-1, 23-2, and 23-3.  In their declarations, Defendants affirm the existence of multiple fake engagement services, their roles and interests in those operations, and the substance of the allegations in the complaint.

Defendants Nollen, Hedges, and Pasanen admit that they controlled Defendant Social Media Series Limited and the website Likesocial.co.  Doc. # 23 at 9.  Defendants admit that LikeSocial.co was used to operate a fake engagement service designed to "generate [Instagram] 'likes' and 'followers' . . . increasing the user's visibility on Instagram platform and enhancing the user's experience [on Instagram]."  *Id.* at 9-10.

Defendants Nollen and Hedges admit to operating and controlling the websites SocialEnvy.co and IGFamous.net through Social Envy Limited, another New Zealand-based LLC.  *Id.* at 10.  Defendants Nollen and Hedges acknowledge the receipt of the February 20, 2018 cease and desist

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

FACEBOOK, INC. AND INSTAGRAM, LLC'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FOR
LACK OF PERSONAL JURISDICTION AND *FORUM NON CONVENIENS*

letter from Facebook for operating fake engagement websites SocialEnvy.co and IGFamous.net. *Id.* at 10-11. And Defendants admit they ignored the cease and desist letter with respect to IGFamous.net and simply "rebranded" the site as LikeSocial.co. *Id.* at 11, ln. 9-10.

Defendants deny that *they personally* operated the network of bots and Instagram accounts that delivered automated likes to their customers through the likesocial.co website. Doc. # 23 at 9-10; Doc. # 23-3 ¶ 21. Moreover, Defendants Pasenen and Hedges deny that they ever had Instagram accounts, Doc. # 23 at 11; Doc. # 23-1 ¶ 7; Doc. # 23-3 ¶ 8, while Defendant Nollen claims he only had a personal Instagram account that "had nothing to do with the commercial conduct alleged in the complaint." Doc. # 23 at 11; Doc. # 23-2 ¶ 7. Defendants also claim that IGFamous.net did not maintain an Instagram account. Doc. # 23-3 ¶ 29; Doc. # 23 at 5.

Finally, Defendants claim that Social Envy Limited "had no branch office or comparable facilities in California and no telephone listing or mail list address in California." Doc. # 23 at 4 and Doc. # 23-1 ¶ 13. This claim is not consistent with the website socialenvy.co, which Social Envy Limited operated, and which listed a Stockton, California phone number for "U.S. Support." *See* Declaration by Jason J. Kim ("Kim Decl.") ¶¶ 4 and 5, Exhs. C and D.

### D. **Defendants' Accounts**[2]

Contrary to the claims in their declarations, Defendants Nollen, Hedges, and Pasenen did in fact create and control Instagram accounts. *See* Declaration by Michele Chan ("Chan Decl.").

On July 10, 2009, Defendant Hedges created a Facebook account in his own name, "Leon Hedges," with registration email address hedgesleon@xxxxxxx.com, and registration phone number xxxxx600021 ("Account 1"). Chan Decl. ¶ 4. On August 30, 2016, Hedges created the Facebook advertising account xxxxxxxxxxx32707, and used it to purchase ads targeting Facebook users located in the United States. *Id.* Account 1 was disabled by Facebook on February 20, 2018. *Id.*

On May 11, 2017, Defendant Hedges created a personal Instagram account using the subscriber name "Leon Hedges," the username "hedgesleon," and registration email address

---

[2] A table listing Defendants' Facebook and Instagram accounts and other relevant account information is attached hereto as Exhibit 1.

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

envyelectricalnz@xxxxx.com ("Account 2"). *Id.* ¶ 4. Account 2 was created using an IP address located New Zealand. *Id.* Account 2 was disabled by Instagram on December 18, 2018. *Id.*

On September 14, 2017, Defendant Hedges also created an Instagram account using the subscriber name "Social Envy," the username "SocialEnvyOfficial," with registration email address hedgesleon@xxxxxxx.com, and the registration phone number was xxxxx600021 ("Account 3"). *Id.* ¶ 6. The registration email address and phone number on Account 3 were the same email address and phone number listed on Hedges's Facebook account (Account 1). *Id.* ¶¶ 5 and 6. Account 3 was created using an IP address located in New Zealand. *Id.* ¶ 6. Account 3 was disabled by Instagram on December 18, 2018. *Id.*

Defendant Nollen admitted that he had a personal Instagram account, but he also controlled the IGFamous Instagram account. *Id.* ¶ 8. Nollen created the IGFamous Instagram account on October 2, 2012, using the subscriber name "IGFamous_," username "IGFamousnet," registration email arend_18@xxxxxxx.co.nz, and the registration phone number xxxxxx71960 ("Account 5"). *Id.* As of December 18, 2018, the URL IGFamous.net was listed on the Instagram page profile for Account 5. Account 5 was disabled by Instagram on December 18, 2018. *Id.*

Defendant Nollen's Facebook account listed the same email address and phone number as the IGFamous Instagram account (Account 5). *Id.* ¶¶ 7 and 8. Nollen created his Facebook account on November 19, 2009, using the subscriber name "Arend Nollen," the registration email arend_18@xxxxxxx.co.nz, and the registration phone number xxxxxx71960 ("Account 4"). *Id.* ¶ 8. On July 14, 2014, Nollen created the Facebook page "Social Envy," and was an administrator for the "Social Envy" until the page was disabled on February 20, 2018. *Id.* Account 4 was disabled by Facebook on February 20, 2018. *Id.*

On May 30, 2009, Defendant Pasanen created a Facebook using the subscriber name "Dave Pasanen," and the registration email david_rulez_nz@hotmail.com ("Account 6"). *Id.* ¶ 9. Defendant Pasanen was listed as an administrator for the Facebook pages "Hitfame" and "Social Envy." *Id.* On April 30, 2013, Account 6 created the Facebook advertising account xxxxx1925 and used it to purchase ads targeting Facebook users located in the United States. *Id.* Account 6 paid for the ads

FACEBOOK, INC. AND INSTAGRAM, LLC'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FOR
LACK OF PERSONAL JURISDICTION AND *FORUM NON CONVENIENS*

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

using the PayPal account socialmediaseries@xxxxx.com. *Id.* Account 6 was disabled by Facebook on April 26, 2019.

On August 29, 2016, Defendant Pasanen created an Instagram account using subscriber name "HitFame," username "hitfame," and the registration email socialmediaseries@xxxxx.com ("Account 7"). *Id.* ¶ 10. The email account socialmediaseries@xxxxx.com was the same email account associated with the PayPal account Pasanen used to buy ads through his Facebook account. *Id.* ¶ 9. Account 7 was created using an IP address located in New Zealand. *Id.* Between August 29, 2016 and January 17, 2019, the URL IGFamous.co was listed on the Instagram profile for Account 7. *Id.* Account 7 was disabled by Instagram on January 17, 2019. *Id.*

Additionally, between December 7, 2015 and March 8, 2018, Defendants Nollen, Hedges, and Pasanen were common administrators of the Facebook page "Monstagram," which was once named "IG Famous." *Id.* ¶ 11. The Monstagram page was disabled on March 8, 2018. *Id.* When the page was last active, it stated, "Welcome to monstagram.co, where we automatically set up your account to receive instant likes on all new posts!" *Id.*

Similarly, between December 27, 2015, and February 20, 2018, Defendants Nollen, Hedges, and Pasanen were also common administrators of the Facebook page "Social Envy." *Id.* ¶ 12.

## III.   THIS COURT HAS JURISDICTION OVER DEFENDANTS

Federal Rule of Civil Procedure 12(b)(2) authorizes a defendant to seek a dismissal of an action for lack of personal jurisdiction. Fed. R. Civ. P. 12(b)(2). When a defendant challenges a court's jurisdiction over it, the plaintiff bears the burden of establishing that jurisdiction is proper. *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1068 (9th Cir. 2015). However, a plaintiff "need only make a *prima facie* showing of jurisdictional facts to withstand the motion to dismiss" when the motion to dismiss is based on written materials rather than an evidentiary hearing. *See id.* A plaintiff makes a *prima facie* showing by producing admissible evidence which, if believed, would be sufficient to establish the existence of personal jurisdiction. *Ballard v. Savage*, 65 F.3d 1495, 1498 (9th Cir. 1995). In deciding whether a *prima facie* showing has been made, "uncontroverted allegations in the complaint are accepted as true, and factual disputes created by conflicting affidavits are resolved in the plaintiff's favor." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2003).

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

1    This Court has personal jurisdiction over Defendants for two reasons.  First, Defendants agreed

2    to the forum selection clause in the Instagram TOU, and therefore personal jurisdiction in this Court.

3    Second, notwithstanding the Instagram TOU, Defendants' contacts with California permit this matter

4    to be decided in the Northern District of California.

5    ## A.    Defendants Consented to Personal Jurisdiction under the Instagram TOU

6    Defendants consented to personal jurisdiction in this Court when they signed up for Instagram

7    accounts.  Because Defendants agreed to the forum selection clause in Instagram's TOU, and the

8    clause is not unreasonable or unjust, Defendants are properly before this Court.

9    A forum selection clause is construed as consent by the parties to the personal jurisdiction of

10   the courts of the selected forum.  *Holland Am. Line Inc. v. Wartsila N. Am., Inc.*, 485 F.3d 450, 458

11   (9th Cir. 2007).  Forum selection clauses, like the one found in Instagram's TOU, are *prima facie* valid

12   and specifically enforceable unless the party opposing the clause clearly shows "that enforcement

13   would be unreasonable and unjust, or that the clause is invalid for such reasons as fraud or

14   overreaching."  *Maneti-Farrow, Inc. v. Gucci America, Inc.*, 858 F.2d 509, 512 (9th Cir. 1988)

15   (quoting *The Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15 (1972)).  Forum selection clauses are

16   equally applicable to contractual and tort causes of action.  *Maneti-Farrow*, 858 F.2d at 514 (citing

17   *Costal Steel Corp. v. Tilghman Wheelabrator Ltd.*, 709 F.2d 190, 203 (3d Cir 1983)).  The party

18   opposing a forum selection clause must "show that a trial in the contractual forum would be so gravely

19   difficult and inconvenient that he will for all practical purposes be deprived of his day in court."  *The*

20   *Bremen*, 407 U.S. at 18.

21   In this case, Defendants consented to personal jurisdiction in this forum.  A user agrees to the

22   Instagram TOU when they create an account.  Doc. # 1 ¶ 5; Chan Decl. ¶. 3; *see also In re Facebook*

23   *Biometric Info. Privacy Litig.*, 185 F. Supp. 3d 1155, 1164-67 (N.D. Ca. May 5, 2016) (examining

24   Facebook's user-registration process and finding it constituted a binding contract on the user); *Fteja*

25   *v. Facebook, Inc.*, 841 F. Supp. 2d 829, 838-40 (S.D.N.Y. Jan. 24, 2012) (same).  And, the Instagram

26   TOU includes a forum selection clause in which users consent to personal jurisdiction in this Court.

27   Courts have consistently affirmed the validity of Facebook's forum selection clause (which mirrors

28   Instagram's).  *See, e.g., Hayes v. Facebook, Inc. et al.*, Case No. 18-cv-02333-MEH, Doc. 54 at 4 (D.

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

FACEBOOK, INC. AND INSTAGRAM, LLC'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FOR
LACK OF PERSONAL JURISDICTION AND *FORUM NON CONVENIENS*

Col. Mar. 6, 2019) (enforcing Facebook's forum selection clause); *Thomas v. Facebook, Inc.,* Case No. 18-cv-00856-LJO-BAM, Doc. 14 at 7, (E.D. Cal. Aug. 15, 2018) ("the Court is not aware of any case concluding that the forum selection clause in Facebook's SSR [now the TOU] is invalid") (citing *Dolin v. Facebook, Inc.*, 289 F. Supp. 3d 1153, 1159-60 (D. Haw. Feb. 6, 2018); *Franklin v. Facebook, Inc.*, 2015 WL 7755670, at *2 (N.D. Ga. Nov. 24, 2015); *Fteja*, 841 F. Supp. 2d at 835)).

In their motion, Defendants attempt to avoid the forum selection clause by contesting factual allegations in the complaint with self-serving declarations. Specifically, Defendants do not argue that the forum selection clause should be invalidated because of fraud or overreaching; nor do they argue that they would be deprived of their day in court, if it were enforced. Instead, Defendants contest the allegation in paragraph 4 of the complaint that they agreed to Instagram's TOU. In their declarations, Defendants assert (1) that, with one exception, they did not personally create any Instagram accounts (of any kind), and (2) that they relied on third parties to create the Instagram accounts used by Defendants' business (the "LikeSocial business Instagram accounts") to deliver the fake engagement services set forth in the complaint.

Factually, both of these allegations are contradicted by Plaintiffs' declarations. First, the Chan Declaration sets forth evidence that the individual Defendants did, in fact, personally create and control Instagram and Facebook accounts between 2009 and 2018, and some of those accounts were used to manage Facebook pages furthering their fake engagement services. Chan Decl. ¶ 4-12. Second, the Kim Declaration sets forth that, on Defendants' own website, Defendants claimed that they (not third parties) created Instagram accounts in order to render their services. Kim Decl. ¶ 3, Exh. B. The terms of service for IGFamous.net,[3] stated, "We have created real looking Instagram accounts, when you post [sic] our system will instantly detect your new post and likes are sent." *Id.* Defendants admit that IGFamous.net was rebranded to LikeSocial.co, so Defendants continued to use the "real looking Instagram accounts" as alleged in the complaint. Doc. # 23 at 11, ln. 9-10.

According to the Ninth Circuit, to the extent Defendants' declarations contradict Plaintiffs' asserted facts and admissible evidence, the conflict must be resolved in favor of Plaintiffs.

---

[3] IGFamous.net was operated by Defendant Social Media Series (Doc. # 23 at 11, ln. 6; Doc. # 23-3 ¶ 27).

FACEBOOK, INC. AND INSTAGRAM, LLC'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND *FORUM NON CONVENIENS*

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

*Schwarzenegger*, 374 F.3d at 800.   Accordingly, even if the Court were to credit Defendants' declarations, their motion to dismiss on these grounds should be denied.

Moreover, from a legal perspective, even if third party vendors created and operated the LikeSocial business Instagram accounts, it would not help Defendants.  As the Ninth Circuit has held, a "range of transaction participants, parties and non-parties, should … be subject to forum selection clauses" so long as the "alleged conduct of the non-parties is so closely related to the contractual relationship." *Manetti-Farrow*, 858 F.2d at 514 n.5; *Holland America Line*, 485 F.3d at 456 & n.2.

Here, Defendants are "closely related" to the LikeSocial business Instagram accounts used to carry out the scheme set forth in the complaint.  In fact, Defendants' entire business model depended on the creation and use of Instagram accounts—an allegation they do not deny.  As set forth in the complaint, Defendants used thousands of Instagram accounts—all of which were bound by the TOU— to manipulate Instagram's platform through fake engagement.  Doc. # 1 ¶¶ 1, 22, 35-40.  Because Defendants' declarations do not controvert those allegations, they must be accepted as true. *Schwarzenegger*, 374 F.3d at 800.  Therefore, their motion should be denied.

Finally, Defendants propose an unreasonable interpretation of the Instagram TOU's forum selection clause in order to avoid jurisdiction.  In the applicable version of the TOU, there are two distinct cases: one, when a user is bringing a claim against Instagram (or Facebook) and another, when Instagram is bringing a claim against a user.  This matter falls in the latter category (emphasis added):

> If you are a consumer, the laws of the country in which you reside will apply to any claim, cause of action, or dispute ***you have against us*** that arises out of or relates to these Terms ("claim"), and you may resolve your claim in any competent court in that country that has jurisdiction over the claim.  ***In all other cases, you agree that the claim must be resolved exclusively in the U.S. District Court for the Northern District of California*** or a state court located in San Mateo County, that ***you submit to the personal jurisdiction of either of these courts for the purpose of litigating any such claim***, and that the laws of the State of California will govern these Terms and any claim, without regard to conflict of law provisions.

The "consumer" language cited by Defendants applies for any dispute a *user* may have against *Instagram*.  "In all other cases," *e.g.*, when Instagram has a claim against a user, the user agrees "that claim must be resolved exclusively in the U.S. District Court for the Northern District of California

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

FACEBOOK, INC. AND INSTAGRAM, LLC'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FOR
LACK OF PERSONAL JURISDICTION AND *FORUM NON CONVENIENS*

1  …"  There is nothing ambiguous about this language, and the Court should enforce the express intent

2  of the parties and deny the motion on this ground.

### B.   Specific Personal Jurisdiction Exists[4]

4  Although the Court need not reach the question of specific jurisdiction, Plaintiffs submit that

5  it exists based on Defendants' activities, which targeted Californians.  Specific jurisdiction exists

6  whenever a defendant:  (1) purposefully directs activities at the forum or its residents or performs some

7  act by which it purposefully avails itself of the privilege of conducting activities in the forum; (2) the

8  claim arises out of, or relates to those activities; and (3) the exercise of jurisdiction is reasonable.

9  *Brayton Purcell LLP v. Recordon & Recordon*, 575 F.3d 981, 985 (9th Cir. 2009); *Bancroft & Masters,*

10 *Inc. v. Augusta Nat'l Inc*., 223 F.3d 1082, 1086 (9th Cir. 2000); *Lake v. Lake*, 817 F.2d 1416, 1421

11 (9th Cir. 1987).  "The plaintiff bears the burden of satisfying the first two prongs of the test."  *Giotta*

12 *v. Ocwen Fin. Corp.*, 2015 WL 8527520, at *3 (N.D. Cal. Dec. 11, 2015) (quoting *Schwarzenegger,*

13 374 F.3d at 802).  Once the plaintiff does so, defendants must set forth a "compelling case" that the

14 exercise of jurisdiction would not be reasonable.  *CollegeSource, Inc. v. AdademyOne, Inc.*, 653 F.3d

15 1066, 1076 (9th Cir. 2011) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476-78 (1985)).

16 "Purposeful availment" and "purposeful direction" under the specific jurisdiction test are

17 distinct concepts.  *Schwarzenegger*, 374 F.3d at 802-3.  A purposeful availment analysis is used in

18 contract disputes; and a purposeful direction analysis is used cases alleging tort claims.  *Id.*  The

19 complaint in this case alleges both tort and contract claims.  The facts described below constitute both

20 purposeful availment and purposeful direction.  Doc. # 1.

### 1.   Purposeful direction

22 "Purposeful direction" exists when a defendant commits intentional acts expressly aimed at

23 the forum state that cause harm the defendant knows is likely to be suffered in the forum state.  *Calder*

24 *v. Jones*, 465 U.S. 783, 788 (1984); *see also Brayton Purcell*, 575 F.3d at 985-86 (adopting the

25 "*Calder*-effects" test to determine purposeful direction prong).  Purposeful direction is established

26 "even by a defendant whose only contact with the forum state is the purposeful direction of a foreign

---

[4] Plaintiffs did not allege general jurisdiction in the complaint and do not argue it here.  However, they reserve their right to plead general jurisdiction.

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

FACEBOOK, INC. AND INSTAGRAM, LLC'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND *FORUM NON CONVENIENS*

1  act having effect in the forum state." *Dole Food Co. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002)

2  (internal quotations omitted).

3  a.  *Intentional Acts*

4  The first element of the *Calder* effects test is satisfied here because Defendants acted

5  intentionally in operating a series of businesses designed manipulate Instagram's platform through the

6  sale of "AUTOMATIC LIKES ON YOUR INSTAGRAM POSTS." Doc. # 1, Exh. 14.  Defendants

7  concede this in their declarations.

8  b.  *Express Aiming*

9  Defendants expressly aimed their conduct at a California resident—Instagram—and its

10  computer network.  For example, in describing the LikeSocial business, Defendants advertised that

11  "Instagram Likes are delivered to your new uploads at your desired speed." *Id.*  Defendants stated,

12  "[o]ur system needs to monitor your account 24/7 and every new post will receive Instagram like

13  automatically." *Id.*, Exh. 20.  On the socialenvy.co website, Defendants stated that they "require your

14  Instagram credentials to run our service because we need access to your Instagram API;"[5] and "[t]o

15  run our service we use your Instagram API to target your specific audience to drive traffic to your

16  account." Doc. # 1, Exh. 13.  Defendants do not dispute those admissions, which now must be

17  accepted as true. *See Schwarzenegger*, 374 F.3d at 800.

18  Additionally, Defendants had customers based in California and delivered "likes" to those

19  customers. Doc. #1 ¶¶ 38-40; *see Warner Bros. Entm't, Inc. v. Free-TV-Video-Online.Info*, 2009 WL

20  10673279, at *4 (C.D. Cal. June 24, 2009) (jurisdiction existed where defendants' online service

21  serviced California users); *see also MGM Studios Inc. v. Grokster, Ltd.*, 243 F. Supp. 2d 1073, 1089

22  (C.D. Cal. Jan. 8, 2003).  As stated above, Defendants set up a California phone number for "U.S.

23  Support," presumably to provide support for those customers.  Kim Decl. ¶¶ 4 and 5, Exhs. C and D.

24

25

26

27

28

---

[5] "API," or application programming interface, is a set of functions and procedures allowing the creation of applications that access the features or data of an operating system, application, or other service.

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

FACEBOOK, INC. AND INSTAGRAM, LLC'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FOR
LACK OF PERSONAL JURISDICTION AND *FORUM NON CONVENIENS*

Based on the geo-location[6] of IP addresses associated with Instagram accounts described in paragraph 38 of the complaint, there were hundreds California-based Instagram accounts that received and delivered fake likes through Defendants' service. Indeed, Defendants' own advertising posts a "testimonial" from one of their customers "@devinphysique," who is a California resident. Doc. # 1, Exh. 18.[7]

Defendants also used a California-based payments system, PayPal, to collect the profits for their fake engagement services, which were offered to California residents. Doc. # 1, Exhs. 21, 13 and 14. Accordingly, Defendants expressly aimed several acts at California.

### c. *Harm*

Based on the nature of the scheme, Defendants reasonably could expect their conduct to cause harm to Instagram in California. *See CollegeSource*, 653 F.3d at 1080 (finding "[a]ctions directed at a forum resident expected to cause harm in the forum constitute purposeful injection"); *see also Dole Food*, 303 F.3d at 1113-14 (stating "a corporation can suffer economic harm both where the bad acts occurred and where the corporation has its principal place of business").

Moreover, Plaintiffs sent two cease and desist letters to Defendants, both of which specifically stated they were sent on behalf of "Menlo Park, California"-based entities and described the harm done to Plaintiffs by Defendants' actions. Doc. # 1 and Exhs. 15 and 16. Defendants do not dispute receiving those cease and desist letters; Defendant Pasanen even admits receiving Exhibit 15. Thus, on two separate occasions, Defendants were notified that their activities were causing harm in California, yet nonetheless continued operating their fake engagement service.

Defendants knew that Plaintiffs are located in California and that their intentional actions were harming Plaintiffs. Accordingly, Defendants purposely directed activities at this forum knowing harm would be suffered in this forum. Similarly, Defendants' purposefully availed themselves to this forum. Therefore, the first prong of the personal jurisdiction test has been satisfied.

---

[6] The term "geo-locating" means an IP address location is identified using open-source services like MaxMind available at www.maxmind.com.
[7] https://allstarbio.com/devin-physique-bio-age-net-worth-height-married-wife-family/.

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

FACEBOOK, INC. AND INSTAGRAM, LLC'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND *FORUM NON CONVENIENS*

### 2.    Plaintiffs' claims arise out of Defendants' forum-related activities

The second prong of the specific jurisdiction test is referred to as the "but for" test.  *See Learjet Inc. v. Oneok, Inc.*, 715 F.3d 716, 742 (9th Cir. 2013) (following the "but for" test).  Under the "but for" test, "a lawsuit arises out of a defendant's contacts with the forum state if a direct nexus exists between those contacts and the cause of action."  *Id.*  Here, all of Plaintiffs' claims arise out of Defendants' misuse and abuse of Plaintiffs' California-based assets and infrastructure.

### 3.    The exercise of jurisdiction is not unreasonable

Because Plaintiffs have made a *prima facie* case that the assertion of specific jurisdiction is constitutional, the burden shifts to Defendants to establish a "compelling case" that the Court's exercise of jurisdiction would be unreasonable.  *CollegeSource*, 653 F.3d at 1079.  Defendants must show the balance of the following seven factors tips sharply in their favor:  (1) the extent of purposeful interjection; (2) the burden on the defendant to defend the suit in the chosen forum; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest in the dispute; (5) the most efficient forum for judicial resolution of the dispute; (6) the importance of the chosen forum to the plaintiff's interest in convenient and effective relief; (7) and the existence of an alternative forum.  *Id*.  As shown below, Defendants have not and cannot present a "compelling case" that the exercise of jurisdiction is unreasonable.

#### a.  *Purposeful interjection*

Defendants make only a blanket denial related to this factor, which is not a "compelling case."  Doc. # 23 at 25.  Because Defendants directed their actions here, there is no need to reanalyze this first factor.  *See Roth v. Garcia Marquez*, 942 F.2d 617, 623 (9th Cir. 1991).  Accordingly, this factor favors a finding of jurisdiction.

#### b.  *Burden on defendants*

Defendants' only argument related to this factor is that they reside in New Zealand.  Doc. # 23 at 25.  However, the complaint alleges that Defendants operated a multi-million dollar business, which profited over $9 million in less than one year.  Doc. # 1 ¶¶ 41-44.  As a result of their scheme, Defendants have the financial means and retained California counsel who has appeared on their behalf in this litigation.  Defendants also vaguely allege that they used unnamed third-party vendors to operate

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

1    their scheme, which they do not allege are located in New Zealand. Doc. # 23 at 7 and 20. Moreover,

2    Defendants' motion fails even to consider, as the Court must, the "corresponding burden on the

3    plaintiff" of having to litigate this case in New Zealand. *Sinatra v. Nat'l Enquirer*, 854 F.2d 1191,

4    1199 (9th Cir. 1988). Although Defendants note that Facebook has an office in New Zealand,

5    Instagram does not. All of the witnesses and documentary evidence regarding the impact on

6    Instagram's systems are located in California. PayPal—Defendants' choice for their payment

7    system—is located in California as well.[8]

8                        c.   *Conflict with sovereignty and the forum state's interest*

9         Defendants claim, with no explanation or support, that New Zealand has a sovereign interest

10   in litigating the claims at issue. In a footnote, they reference an attorney declaration, stating this

11   lawsuit "raises legal issues that are unresolved in [New Zealand]." Doc. # 23 at 21, n.15. However,

12   Defendants fail to identify a single *competing interest* (*e.g.*, a conflict).

13        Defendants argue that "California has little or no interest in adjudicating this dispute." Doc. #

14   23 at 27. However, it is well established that "California maintains a strong interest in providing an

15   effective means of redress for its residents who are tortiously injured." *Sinatra*, 854 F.2d at 1200. In

16   support of their argument, Defendants argue the alleged conduct took place in New Zealand and that

17   "the Likesocial.co website, over which Plaintiffs have sued, is produced and emanates from New

18   Zealand." Doc. # 23 at 27, ln. 6-8. But those claims are unavailing. First, as shown above, the conduct

19   that gave rise to the complaint was directed at California and injured a California business; the harm

20   occurred here. Second, California has an interest in adjudicating matters involving fake social media

21   content and other forms of misinformation which adversely impact its residents' reputation and

22   operation. Additionally, the Likesocial.co website was registered through GoDaddy and hosted by

23   Wild West Domains, both U.S. companies with offices in California. Kim Decl. ¶¶ 6 and 7.

24                       d.   *The efficient resolution of the controversy*

25        "This factor is no longer weighed heavily . . . given the modern advances in communication

26   and transportation." *Panavision, Intern., L.P. v. Toeppen,* 141 F.3d 1316, 1323 (9th Cir. 1998). But

27

28   [8] *See* https://www.paypal.com/us/webapps/mpp/about (stating PayPal is headquartered at 2211 North
     First Street, San Jose, California 95131).

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

FACEBOOK, INC. AND INSTAGRAM, LLC'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FOR
LACK OF PERSONAL JURISDICTION AND *FORUM NON CONVENIENS*

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

1    considering this factor, Defendants have not met their burden.  California—where Plaintiffs, the

2    evidence, and third-party witnesses like PayPal are headquartered, and where the harm in this case

3    was felt—is the most efficient place to resolve this controversy.  Defendants claim, in conclusory

4    fashion, that the "witnesses and evidence in this case are in New Zealand."  Doc. # 23 at 27, ln. 13-

5    14.  In support of their argument, they note that Facebook has an office in New Zealand, but fail to

6    identify any *specific* witnesses (like the third-party vendors) located in New Zealand.  Doc. # 23 at 27.

7    As noted above, none of Plaintiffs' witnesses are based in New Zealand, nor did any New Zealand-

8    based Facebook or Instagram employees work on this matter.  Other than Defendants, all other

9    witnesses and evidence appear to be located in California and the U.S.  Because Defendants fail to

10   identify any witnesses or evidence in New Zealand with specificity, they cannot meet their burden on

11   this factor, which weighs in favor of the exercise of jurisdiction.

12                    e.  *Plaintiffs' interest in convenient and effective relief*

13          This factor favors the exercise of jurisdiction.  Plaintiffs are California citizens asserting claims

14   under California and U.S. federal law.  This Court is more familiar with both sets of laws than a

15   tribunal in New Zealand would be, and thus this District is a more convenient, efficient, and effective

16   forum in which to decide this matter.  *See Yahoo! Inc. v. La Ligue Contre Le Racisme et*

17   *L'Antisemitisme*, 145 F. Supp. 2d 1168, 1179 (N.D. Cal. Jun. 7, 2001).  Accordingly, this factor also

18   weighs in favor of jurisdiction.

19                    f.  *Existence of an alternative forum*

20          Relying on *Core-Vent Corp. v. Nobel Industries AB*, 11 F.3d 1482, 1490 (9th Cir. 1993),

21   Defendants argue that Plaintiffs have the burden to establish that an alternative forum is unavailable.

22   Doc. # 23 at 31.  But the law in the Ninth Circuit appears split on this issue.  *See Dole Food*, 303 F.3d

23   at 1116 (collecting cases).  At least one recent case found that the burden of proving this factor remains

24   with the defendant.  *Id.* (citing *Ballard*, 65 F.3d at 1495).

25          Defendants argue that this factor weighs in their favor because the "parties, witnesses, and

26   evidence are in New Zealand."  Doc. # 23 at 28.  As explained above, other than Defendants being

27   located in New Zealand, there are no witnesses or evidence in New Zealand, nor do Defendants

28   identify any witnesses or evidence in New Zealand.  *Id.*

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

Although some of the relief sought by Plaintiffs *may* be available in New Zealand, a significant procedural difference between the forums exists:  New Zealand would not allow Plaintiffs to have a trial before a jury.  *See* Senior Courts Act 2016, §§ 15 and 16.[9]  At best, this factor is neutral, but the unavailability for Plaintiffs to have this matter resolved by a jury weighs in favor of exercising jurisdiction over Defendants.

Almost all the factors weigh in favor of jurisdiction and a finding that the exercise of jurisdiction in California would be reasonable.  Defendants have not and cannot meet their burden to the contrary.  For the reasons stated above, specific jurisdiction exists, and Defendants' motion to dismiss should be denied.

**C.**    **Alternatively, Plaintiffs Should Be Entitled to Conduct Jurisdictional Discovery**

Should the Court see benefit in having a more robust record before it, Plaintiffs respectfully request jurisdictional discovery.  Courts in the Ninth Circuit routinely permit such discovery, particularly in cases where pertinent facts bearing on the question of jurisdiction are controverted, or where a more satisfactory showing of facts is necessary.  *Data Disc, Inc. v. Systems Technology Associates, Inc.*, 557 F.2d 1280, 1285 n.1 (9th Cir. 1977).  And here, Defendants' moving papers and declarations invite jurisdictional discovery, particularly given their untested "third-party vendor" claim, as well as their untested denials of forum-related contacts.  If granted leave to conduct such discovery, Defendants specifically would seek:

- The identities of the alleged "third-party vendors" utilized by Defendants, whom they claim shield them from this Court's jurisdiction;

- Any agreements, communications, and correspondence with those "third-party vendors;"

- Identification of all entities owned and controlled by Defendants within the past five years, to discover the full extent of Defendants' scheme and whether they have used or continue to use other shell organizations to carry it out;

- Identification of Defendants' customers, including any agreements, communications, and correspondence with those customers, to determine whether and to what extent Defendants directly contracted with California customers;

---

[9] Available at the following URL:
http://www.legislation.govt.nz/act/public/2016/0048/latest/whole.html#DLM5759321

- Identification of any and all Instagram accounts Defendants created or otherwise utilized as part of their scheme;

- A complete list of all domain names Defendants utilized to offer Instagram services;

- Any software code Defendants have utilized to interact with Instagram's California-based platform and software;

- A complete description of Defendants' methods for acquiring Instagram followers and "likes;"

- A complete description of Defendants' methods for automating Instagram functionality and providing Instagram-related services; and

- The identification of any "affiliates," including those located in California (Doc. # 1, Exh. 17).

## IV.   THE COURT SHOULD DENY DISMISSAL FOR *FORUM NON CONVENIENS*

Alternatively, Defendants argue this matter should be dismissed based on the doctrine of *forum non conveniens.* Doc. # 23 at 29. Defendants waived any objection to this forum by agreeing to the forum selection clause in Instagram's TOU. However, regardless of the waiver, Defendants' motion should be denied because they fail to meet their burden under the *forum non conveniens* doctrine.

The doctrine of *forum non conveniens* is "an exceptional tool to be employed sparingly, not a doctrine that compels plaintiffs to choose the optimal forum for their claim." *Dole Food*, 303 F.3d at 1118 (citations omitted); *see also Boston Telecommunications Group, Inc. v. Wood*, 588 F.3d 1201, 1206 (9th Cir. 2009). The Court must decide whether Defendants have "made a clear showing of facts which establish such oppression and vexation of a defendant as to be out of proportion to a plaintiff's convenience . . . ." *Id.* The fact that a case involves conduct or defendants from overseas is not in itself sufficient to support dismissal. *See Nibirutech Ltd v. Jang*, 75 F. Supp. 3d 1076, 1082 (N.D. Cal. 2014) (citing *Carijano v. Occidental Petroleum Corp.*, 643 F.3d 1216, 1224 (9th Cir. 2011)). Moreover, where, as here, the proposed alternative forum is a foreign country, the remedy is particularly drastic. *Nibirutech*, 75 F. Supp. 3d at 1080.

Ordinarily, a defendant must prove an adequate alternative forum exists, and that the balance of private and public interest factors favors dismissal. *Dole Food*, 303 F.3d at 1118. A defendant carries a heavier burden when the plaintiff has chosen their home forum for litigation. *See Gates*

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

FACEBOOK, INC. AND INSTAGRAM, LLC'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FOR
LACK OF PERSONAL JURISDICTION AND *FORUM NON CONVENIENS*

1    *Learjet Corp. v. Jensen*, 743 F.2d 1325, 1334-35 (9th Cir. 1984).  In that case, "unless the balance is

2    *strongly* in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *Id.*

3    *(emphasis added)*; *see also Piper Aircraft Co. v. Reyno*, 454 U.S 235, 255 (1981) (stating "that a

4    plaintiff's choice of forum is entitled to greater deference when the plaintiff has chosen the home

5    forum").  Moreover, where, as here, a valid forum selection clause governs the parties' relationship,

6    the chosen forum "should be given controlling weight in all but the most exceptional cases."  *In re*

7    *Facebook, Inc. S'holder Derivative Privacy Litig.*, 367 F. Supp. 3d 1108, 1119 (N.D. Cal. 2019) (citing

8    *Atl. Marine Const. Co. v. U.S. Dist. Court for Western Dist. of Texas*, 571 U.S. 49, 63 (2013).  Here,

9    as explained above, the chosen forum is California.

10   ### A.   Defendants Waived Their Right to Challenge the Convenience of this Forum

11        Because Defendants agreed to the forum selection clause in Instagram's TOU, "they waive the

12   right to challenge the preselected forum as inconvenient or less convenient for themselves or their

13   witnesses, or for their pursuit of the litigation." *Atl. Marine*, 571 U.S. at 64.  As the "party defying

14   the forum-selection clause," Defendants' forum preference "merits no weight." *Id.* at 63.  Rather, the

15   Court "must deem the private-interest factors to *weigh entirely in favor of the preselected forum*,"

16   which is California.  *Id.* (emphasis added); *see also In re Facebook, Inc.*, 367 F. Supp. 3d at 1119

17   (where forum selection clause governs, the court "should not consider arguments about the parties'

18   private interests," including whether the chosen forum is "inconvenient or less convenient for

19   themselves or their witnesses, or for their pursuit of the litigation").

20        As discussed in detail above, each of the Defendants created and controlled multiple Instagram

21   accounts and agreed to Instagram's TOU.  Defendants are bound by the forum selection clause to

22   which they agreed in the Instagram TOU.  *See*, *e.g.*, *Ebay Inc. v. Dig. Point Sols., Inc.*, 2009 U.S. Dist.

23   LEXIS 80335 (N.D. Cal. Aug. 17, 2009) at *6.  Therefore, the Court "must deem the private-interest

24   factors to weigh entirely in favor of the preselected forum:" California.  *Atl. Marine*, 571 U.S. at 63.

25        "[A]dditional expense does not necessarily invalidate a forum-selection clause[.]" *Paper*

26   *Express. Ltd. v. Pfankuch Maschinen GmbH*, 972 F.2d 753, 758 (7th Cir. 1992).  "Whatever

27   inconvenience [Plaintiffs] would suffer by being forced to litigate in a court in [California] was

28   foreseeable at the time that [they] agreed to" the forum-selection clause in Instagram's TOU.  *AAR*

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

FACEBOOK, INC. AND INSTAGRAM, LLC'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FOR
LACK OF PERSONAL JURISDICTION AND *FORUM NON CONVENIENS*

1    *Int'l, Inc. v. Nimelias Enters. S.A.*, 250 F.3d 510, 526 (7th Cir. 2001).  The time for Plaintiffs to have

2    considered whether the forum-selection clause in Instagram's TOU would terribly disadvantage them

3    was before they agreed to use (and manipulate) the platform.  *See Abbott Labs. v. Takeda Pharm. Co.*,

4    476 F.3d 421, 426 (7th Cir. 2007) (when signing an agreement containing a forum-selection clause,

5    the party attempting to evade the clause "could and no doubt did consider the potential inconvenience

6    of litigating in Japan, but decided to risk it," and "is bound by its choice"); *Barry v. Society of Lloyd's*,

7    3 F.3d 156 (7th Cir. 1993) (requiring an American plaintiff to litigate in England as per a forum-

8    selection clause was not unreasonable); *Walker v. Carnival Cruise Lines, Inc.*, 1987 U.S. Dist. LEXIS

9    12716, at *4 (N.D. Ill. Dec. 22, 1987) (noting that "the cost of litigating far from home, and the loss

10   of effectiveness which may occur when a party is required to rely on depositions, even video

11   depositions, rather than live testimony to a jury" are not grounds to avoid a forum-selection clause).

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

## B.   Defendants Otherwise Have Not Met Their Burden to Obtain Dismissal

13   Even if Defendants were not bound by the TOU's forum selection clause (and they are),

14   Defendants' motion to dismiss for *forum non conveniens* should be denied nonetheless.  Defendants

15   have not and cannot otherwise meet their "substantial burden" to "deny Plaintiffs access to [their home

16   forum]."  *Carijano*, 643 F.3d at 1236.  Specifically, Defendants fail to show an adequate alternative

17   forum exists, and that the balance of private and public interest factors *strongly* favors dismissal.  *See*

18   *Dole Food*, 303 F.3d at 1118; *Gates Learjet*, 743 F.2d at 1334-35.

### 1.   Defendants have not established New Zealand is an adequate alternative
### forum

21   "An alternative forum is deemed adequate if: (1) the defendant is amenable to process there;

22   and (2) the other jurisdiction offers a satisfactory remedy."  *Carijano*, 643 F.3d at 1225.  In an effort

23   to meet their burden, Defendants submit an attorney declaration that claims "Plaintiffs could file suit

24   in the High Court of Wellington against defendants and assert claims for breach of contract, unlawful

25   interference with a business … and various causes of action which would come under the category of

26   unjust enrichment."  Doc. # 23-4 ¶ 6.  But those conclusory allegations fail entirely to establish that

27   Plaintiffs could obtain a satisfactory remedy in New Zealand.  Indeed, Mr. Dewar's declaration fails

28

FACEBOOK, INC. AND INSTAGRAM, LLC'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FOR
LACK OF PERSONAL JURISDICTION AND *FORUM NON CONVENIENS*

1    even to state what remedies are available to Plaintiffs under the "various causes of action" he claims

2    to exist.  And having failed to do so, Defendants cannot possibly meet their burden.

3         **2.     The private and public interest factors favor litigation in California**

4              a.   *The private interest factors*

5         Under *Dole*, "[p]rivate interests of the litigants include ease of access to sources of proof;

6    availability of compulsory process for attendance of unwilling witnesses, and cost of obtaining

7    attendance of willing witnesses; and likelihood of a fair trial. 303 F.3d at 1119; *see, e.g., Gulf Oil Corp*

8    *v. Gilbert*, 330 U.S. 501, 508 (1947).  All of these private interests weigh heavily in favor of exercising

9    jurisdiction over Defendants.

10        First, Defendants fail to address any of the private interest factors other than making an

11   unsupported claim that all the witnesses and evidence are located in New Zealand; a claim Plaintiffs

12   refuted above.  Other than Defendants being located in New Zealand, there are no witnesses or

13   evidence in New Zealand, nor do Defendants identify any specific witness or evidence in New Zealand

14   in their motion.  *See Heller Fin., Inc. v. Midwhey Powder Co.*, 883 F.2d 1286, 1293 (7th Cir. 1989)

15   (affirming denial of motion to transfer venue because moving party's assertions regarding witnesses

16   were vague and lacked specificity); *see also Costco Wholesale Corp. v. Liberty Mut. Ins. Co.*, 472 F.

17   Supp. 2d 1183, 1193 (S.D. Cal. 2007) ("In establishing inconvenience to witnesses, the moving party

18   must name the witnesses, state their location, and explain their testimony and its relevance.").

19   However, the Facebook and Instagram witnesses for this matter are located in California, not New

20   Zealand; key third-party witnesses regarding Defendants' operations, including customers, internet

21   activity, and illicit profits—PayPal and GoDaddy—are located in the U.S.; and Plaintiffs' evidence

22   (including business records, Instagram account records, and financial records) is located in California.

23   Therefore, the ease of access to sources of proof weighs in favor of this forum.

24        Second, Defendants failed to address the availability of compulsory process for attendance of

25   unwilling witnesses, and cost of obtaining attendance of willing witnesses in both forums.  Doc. # 23

26   at 30.  Based on Plaintiffs' research of New Zealand civil procedure, it appears that these factors weigh

27   in favor of Plaintiffs, given the number of Plaintiffs' witnesses located in the U.S. and the costs

28   associated with transporting and housing those witnesses in New Zealand for the duration of trial.  *See*

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

FACEBOOK, INC. AND INSTAGRAM, LLC'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FOR
LACK OF PERSONAL JURISDICTION AND *FORUM NON CONVENIENS*

1   Senior Courts Act 2016 § 41; Criminal Procedure Act 2011 § 374
2   (http://www.legislation.govt.nz/act/public/2011/0081/latest/DLM3359962.html).   Likewise, it
3   appears Plaintiffs would be unable to compel third-party witnesses to appear in New Zealand.  *See*
4   Senior Courts Act 2016.

5       Finally, as to whether Plaintiffs could get a fair trial in New Zealand, Plaintiffs would be denied
6   the right to a jury trial there.  *See* Senior Courts Act 2016, §§ 15 and 16.  Conversely, Defendants fail
7   to identity any impediments to a fair trial before this Court.  Doc. # 23 at 30.

8       In the end, even if the Court *could* consider the private factors in light of the parties' forum
9   selection clause, those factors weigh strongly in favor of exercising jurisdiction over Defendants.

10              b.   *The public interest factors*

11      The relevant public interest factors include:  "(1) the local interest in the lawsuit, (2) the court's
12   familiarity with the governing law, (3) the burden on local courts and juries, (4) congestion in the
13   court, and (5) the costs of resolving a dispute unrelated to a particular forum."  *Carijano*, 643 F.3d at
14   1232 (quoting *Tuazon v. R.J. Reynolds Tobacco Co.*, 433 F.3d 1163, 1181 (9th Cir. 2006)).

15      It is well established that "California has an interest in protecting corporations based in
16   California."  *Dole Food*, 303 F.3d at 1119.  Any interest that New Zealand may have in prosecuting
17   or preventing Defendants' illicit activity is likely outweighed by "California's interest in adjudicating
18   claims of fraud … perpetrated against a company based in California."  *Id.*  Even still, the Court need
19   only find an "identifiable local interest in the controversy, not whether another forum also has an
20   interest."  *Bos. Telecommunications Grp., Inc. v. Wood*, 588 F.3d 1201, 1212 (9th Cir. 2009).
21   California undeniably has "an interest in preventing fraud from taking place within its borders," *id.,*
22   and fake online activity which is directed at California customers, and damages the reputation and
23   operations of Plaintiffs, both California residents.  Accordingly, this factor weighs against dismissal.

24      The second public interest factor also weighs against dismissal.  This Court has expertise in
25   California and U.S. federal law.  Given the claims in this case, including under California's Computer
26   Data Access and Fraud Act and the federal Computer Fraud and Abuse Act, there is no indication or
27   evidence that New Zealand courts are versed in, let alone experts in, this governing law.

28

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

FACEBOOK, INC. AND INSTAGRAM, LLC'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FOR
LACK OF PERSONAL JURISDICTION AND *FORUM NON CONVENIENS*

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

Congestion of courts is a minor factor in the transfer analysis. *See Doe v. Uber Techs., Inc.*, 2017 U.S. Dist. LEXIS 83462, *21-22 (N.D. Cal. May 31, 2017).  In any event, Defendants present no evidence concerning this factor or the next factor, burden on local courts and juries (Doc. # 23 at 31), so, presumptively, both factors weigh against dismissal.

Defendants have not met the "substantial burden" required to "deny Plaintiffs access to [their home forum]." *Carijano*, 643 F.3d at 1236.  Defendants failed to show an adequate alternative forum exists, and that the balance of private and public interest factors *strongly* favors dismissal. *See Dole Food*, 303 F.3d at 1118; *Gates Learjet*, 743 F.2d at 1334-35.  Moreover, because Defendants agreed to the forum selection clause in Instagram's TOU, they waived the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses, or for their pursuit of the litigation. *See Atl. Marine*, 571 U.S. at 64.

## V.    <u>CONCLUSION</u>

For these reasons, the Court should deny Defendants' motion in its entirety so this lawsuit can proceed on the merits.

Dated:  July 10, 2019                                        **HUNTON ANDREWS KURTH LLP**

By:    ___/s/ Jason J. Kim_____
Ann Marie Mortimer
Jason J. Kim
Attorneys for Plaintiffs
FACEBOOK, INC. and INSTAGRAM, LLC

**EXHIBIT 1**

**Leon Hedges:**

| FBID/IGID | Platform | Subscriber Name | Creation/Disable Dates | Registration Email | Common Registration Information | Registration IP Address Location |
|---|---|---|---|---|---|---|
| xxxxxx649 | Facebook | Leon Hedges | 7/10/2009 – 2/20/2018 | hedgesleon@xxxxxxx.com | • Registration phone number: xxxxx600021<br>• Registration email: hedgesleon@xxxxxxx.com | NA |
| xxxxxxx989 | Instagram | Social Envy | 9/14/2017 – 12/18/2018 | hedgesleon@xxxxxxx.com | • Registration phone number:xxxxx600021<br>• Registration email: hedgesleon@xxxxxxx.com | New Zealand |
| xxxxxxx876 | Instagram | Leon Hedges | 5/11/2017 – 12/18/2018 | envyelectricalnz@xxxxx.com | • NA | New Zealand |

**Arend Nollen**

| FBID/IGID | Platform | Subscriber Name | Creation/Disable Dates | Registration Email | Common Registration Information | Registration IP Address Location |
|---|---|---|---|---|---|---|
| xxxxxx897 | Facebook | Arend Nollen | 11/19/2009 – 2/20/2018 | arend_18@xxxxxxx.co.nz | • Registration phone number: xxxxxx71960<br>• Registration email: arend_18@xxxxxxx.co.nz | NA |
| xxxxxx206 | Instagram | IIGFamous_ | 10/2/2012 - 12/18/2018 | arend_18@xxxxxxx.co.nz | • Phone number: xxxxxx71960<br>• Registration email: arend_18@xxxxxxx.co.nz | NA |

24

**David Pasanen:**

| FBID/IGID | Platform | Subscriber Name | Creation/Disable Dates | Registration Email | Common Registration Information | Registratoin IP Address Location |
|---|---|---|---|---|---|---|
| xxxxxx327 | Facebook | David Pasanen | 5/30/2009 – 4/26/2019 | david_rulez_nz@xxxxxxx.com | PayPal account used for Facebook ads: socialmediaseries@xxxxx.com | NA |
| xxxxxxx776 | Instagram | HitFame | 8/29/2016 – 1/17/2019 | socialmediaseries@xxxxx.com | Registration email: socialmediaseries@xxxxx.com | New Zealand |