Fred Norton (SBN 224725)
Bree Hann (SBN 215695)
Matt Turetzky (SBN 280997)
Tyler M. Layton (SBN 288303)
THE NORTON LAW FIRM PC
299 Third Street, Suite 106
Oakland, California 94607
Telephone: (510) 906-4900
Fax: (510) 906-4910
fnorton@nortonlaw.com
bhann@nortonlaw.com
mturetzky@nortonlaw.com
tlayton@nortonlaw.com

*Attorneys for Defendants AREND NOLLEN, LEON HEDGES, DAVID PASANEN, and SOCIAL MEDIA SERIES LIMITED*

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| FACEBOOK, INC., a Delaware corporation, and INSTAGRAM, LLC, a Delaware limited liability company,<br><br>*Plaintiffs*,<br>v.<br><br>AREND NOLLEN, LEON HEDGES, DAVID PASANEN, and SOCIAL MEDIA SERIES LIMITED,<br><br>*Defendants*. | Case No.: 3:19-cv-02262<br><br>**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND FORUM NON CONVENIENS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>[Declarations of Arend Nollen and David Gerard Dewar Concurrently Filed]<br><br>Date:  August 7, 2019<br>Time: 2:00 p.m.<br>Location: Courtroom 2<br><br>Complaint Filed: April 25, 2019 |

**TABLE OF CONTENTS**

I. INTRODUCTION ........................................................................................................... 1

II. THE OPPOSITION DOES NOT ESTABLISH THAT JURISDICTION OVER DEFENDANTS IN THIS VENUE IS PROPER ........................................................... 3

    A. Defendants Never Consented to Jurisdiction in the Northern District of California to Litigate This Dispute ..................................................................... 3

    B. The Facts Do Not Support a Finding that Specific Jurisdiction Over Defendants in the Northern District of California is Proper ............................... 6

        1. The Opposition Does Not Establish that Defendants Purposefully Directed Any Activity at California ............................................................. 6

        2. Defendants Did not Engage in Any Forum-Related Activities that Would Warrant Exercising Specific Jurisdiction ....................................... 9

        3. The Exercise of Jurisdiction over Defendants Would Be Unreasonable ...................................................................................... 11

        4. Even If Social Media Series Limited Were Subject to Personal Jurisdiction in This Court, the Individually Named Defendants Are Not Subject to Personal Jurisdiction in California ................................. 13

        5. Jurisdictional Discovery ........................................................................ 13

III. DISMISSAL FOR FORUM NON CONVENIENS IS PROPER ................................. 13

    A. Defendants Did Not "Waive" FNC ................................................................ 13

    B. New Zealand is an Adequate Alternate Forum ............................................... 14

    C. The Public and Private Interest Factors Favor New Zealand .......................... 14

IV. CONCLUSION ............................................................................................................. 15

i

CASE NO. 3:19-CV-02262 – DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND FORUM NON CONVENIENS

# TABLE OF AUTHORITIES

Cases

*Asahi Metal Industry Co., Ltd. v. Superior Court*, 480 U.S. 102 (1987) .................................. 6, 12

*Brayton Purcell LLP v. Recordon & Recordon*, 575 F.3d 981 (9th Cir. 2009) .............................. 6

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985) ................................................................ 5, 8

*Int'l Shoe Co. v. Washington*, 326 U.S. 310 (1945) ........................................................................ 5

*Manetti-Farrow, Inc. v. Gucci America, Inc.*, 858 F.2d 509 (9th Cir. 1988) ......................... 10, 11

*Mastrobuno v. Sherson Lehman*, 514 U.S. 52 (1995) ..................................................................... 5

*Mueller v. Apple Leisure Corp.*, 880 F.3d 890 (7th Cir. 2018) ................................................. 2, 14

*Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171 (9th Cir. 2014) .................................................. 11

*Rano v. Sipa Press, Inc.*, 987 F2d 580 (9th Cir. 1993) ................................................................. 12

*Rey v. Rey*, 666 F. App'x 675 (9th Cir. 2016) ................................................................................ 5

*Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797 (9th Cir. 2004) ................................... 9

*Terracom v. Valley Nat'l Bank*, 49 F.3d 555 (9th Cir. 1995) ...................................................... 12

*United States v. Castleman*, 572 U.S. 157 (2014) ......................................................................... 4

*Walden v. Fiore*, 571 U.S. 277 (2014) ............................................................................... 7, 8, 12

Statutes

18 U.S.C. § 1030 .............................................................................................................................. 9

California Penal Code § 502 ........................................................................................................... 9

**REPLY IN SUPPORT OF MOTION TO DISMISS**

I. **INTRODUCTION**

Plaintiffs' Opposition relies on three arguments – each of which Defendants preemptively addressed in their moving papers, and none of which establishes that jurisdiction over Defendants in the Northern District of California is proper.

First and foremost, Plaintiffs argue that Defendants consented to Jurisdiction in this venue by opening Instagram accounts and agreeing to Instagram's Terms of Use ("TOU" or "Terms"). Inexplicably, Plaintiffs have not placed in the record any TOU that they claim Defendants agreed to. And while Plaintiffs claim to have identified a personal Instagram account belonging to Defendant Leon Hedges, that account was, in fact, associated with an electrical wholesale business and was, as with the other Instagram accounts identified by Plaintiffs, entirely unrelated to this matter. Moreover, as discussed in Defendants' moving papers, Plaintiffs' facile "consent" argument: (1) relies on a misinterpretation of Instagram's own Terms of Use (as they currently exist for New Zealand users); (2) ignores the fact that any such Instagram accounts, whether personal or created for other entities, *were entirely unrelated to* the purported misconduct described in the Complaint, and (3) would offend traditional notions of fair play and substantial justice by obligating any person, anywhere in the world, who opened an Instagram account for any reason, to litigate any claims Instagram chooses to assert against them in Instagram's chosen forum. In fact, two Defendants never consented to Instagram's Terms at all, and the other two did not consent in any way that would justify the exercise of jurisdiction over Defendants.

Second, Plaintiffs argue that specific jurisdiction exists because Defendants "targeted Californians" with their LikeSocial.co business. Here, Plaintiffs continue to misunderstand the nature of Defendants' business (repeating the falsehood that Defendants "used a network of computer bots and Instagram accounts to deliver millions of automated and fake likes on Instagram" [Doc. #30 ("Opposition" or "Opp.") at 3]), and they continue to mischaracterize Defendants' role in serving a global customer community. Defendants direct their activities

toward users of Instagram wherever they happen to be in the world – not toward Instagram itself or specifically toward California.  As discussed below and in Defendants' Motion, Plaintiffs cannot establish specific jurisdiction over Defendants because Defendants have not purposefully directed any activities toward California, nor purposefully availed themselves of the privilege of doing business in California.  Plaintiffs' specific jurisdiction argument is based entirely on a misunderstanding of the facts.

Finally, bootstrapping their failed "consent" argument, Plaintiffs assert that Defendants "waived" any *forum non conveniens* ("FNC") challenge when they allegedly consented to jurisdiction in this venue.  Again, two Defendants never consented to Instagram's jurisdiction clause at all, and the other two never consented in any way that would establish jurisdiction over Defendants in this dispute.  Moreover, Plaintiffs are simply incorrect that the existence of a forum selection clause somehow forecloses FNC dismissal.  Even where (unlike here) parties have agreed to a forum selection clause, an exceptional public-interest justification (like that described in Defendants' Motion) can displace contractual forum selection.  *Mueller v. Apple Leisure Corp.*, 880 F.3d 890, 893 (7th Cir. 2018).  Defendants have established that FNC dismissal is proper.

Put simply, there is no legitimate basis for these Defendants – New Zealand residents and a New Zealand company – to be haled into the Northern District of California to defend themselves against Facebook and Instagram.  While Plaintiffs would prefer to litigate in California, that preference must be weighed against the unique burdens on foreign defendants that arise from having to litigate across national borders – burdens that are entitled to significant weight in assessing the reasonableness of exercising jurisdiction.  Thus, Defendants respectfully request that the Court grant their Motion to Dismiss the Complaint for lack of personal jurisdiction, or, in the alternative, on FNC grounds.  To the extent that the Court is inclined to reach outcome other than outright dismissal, Defendants respectfully request the opportunity to engage in targeted jurisdictional discovery to rebut Plaintiffs' misapprehension of the facts relevant to this Motion.

**II.    THE OPPOSITION DOES NOT ESTABLISH THAT JURISDICTION OVER DEFENDANTS IN THIS VENUE IS PROPER**

**A.    Defendants Never Consented to Jurisdiction in the Northern District of California to Litigate This Dispute**

The Opposition relies primarily on the argument that Defendants Nollen and Hedges consented to Instagram's jurisdiction clause contained in a TOU that is not in the record. Opp. at 7 – 9. Citing those two purported Instagram accounts, as well as business accounts that were allegedly opened by Defendants (but that are associated with defunct, non-party entities),[1] Plaintiffs mistakenly claim that Defendants unequivocally consented to litigate in the Northern District of California for all purposes. Plaintiffs are wrong on the facts and law.

In the Opposition, Plaintiffs assert that Defendant Leon Hedges opened a personal Instagram account in 2017, using the email address envyelectricalnz@xxxxx.com. *See* Opp., Exh. 1; Doc. #30-2 (Chan Declaration) at ¶ 4. Mr. Hedges has no recollection of opening such an account, but the email address used indicates that the account was associated with Mr. Hedges' brother's electrical wholesale business (the now defunct Envy Electrical), which was entirely unrelated to the "likes" business described in the Complaint. Declaration of Leon Hedges ("Hedges Decl."), ¶ 2, Exh. A. Regardless, the existence of such an account would not change the jurisdictional analysis discussed below and in Defendants' Motion. Further, Plaintiffs do not dispute that Defendant Nollen used his Instagram account solely for personal purposes (Doc. 23-2 at ¶ 7), and Plaintiffs identify no personal Instagram account for Defendant Pasanen (*see* Opp. Exh., 1). To cover up these gaps, Plaintiffs identify ***Facebook*** accounts that they attribute to Defendants (Opp., Exh., 1), but Plaintiffs do not accuse Defendants of violating Facebook's TOU or interfering with Facebook in any way.

Further Plaintiffs have not offered into evidence a TOU that any Defendant would have

---

[1] At Exhibit 1 to the Opposition, Plaintiffs cite Instagram accounts that were allegedly opened by the Defendants, and that have the following usernames: "Social Envy;" "IIGFamous_;" and "HitFame." Opp., Exh. 1. As described in Defendants' Motion, Social Envy Limited is not a party to this lawsuit and is a separate legal entity from named Defendant SMS (Doc. #23 ("Motion to Dismiss" or "Motion") at 4), and IGFamous.net ceased operations in February 2018 (*id*. at 5). The "HitFame" account identified by Plaintiffs is apparently defunct. *See* Opp., Exh. 1.

3

CASE NO. 3:19-CV-02262 – DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND FORUM NON CONVENIENS

seen and assented to when those accounts were created.  The only TOU before the Court is the one that Defendants were able to locate now, months after all accounts were disabled and still longer after they would have been created.  For this reason alone, the Court cannot find that Defendants consented to jurisdiction in a TOU.

In any event, Plaintiffs' argument requires a remarkably expansive interpretation of the potentially applicable TOU.  According to that interpretation, every individual or business that has ever opened an Instagram account – at any time and for any reason – must defend itself in Instagram's chosen venue, regardless of whether the dispute arises out of the individual or business's use of Instagram.  Put differently, each and every one of Instagram's one billion monthly users – 88% of whom live outside of the U.S., and a substantial number of whom are minors[2] – are subject to jurisdiction in California for any alleged violation of Instagram's **remarkably vague** TOU.  *See* Doc. #23-4, Exh. A ("Instagram TOU") at 7 ("[y]ou can't do anything to interfere with or impair the intended operation of the service").  This cannot be – and fortunately is not – the case.  Defendants did not consent to jurisdiction in California to litigate this dispute.  Motion to Dismiss at 11 – 14.

<u>First</u>, the forum selection clause in the ***current*** New Zealand TOU, by its own terms, applies only to claims that a user has against Instagram – not claims by Instagram against the user.  Specifically, Instagram chose to define "claim" as "any claim, cause of action, or dispute ***you have against us*** that arises out of or relates to these Terms ('claim') …" Instagram TOU at 9 (emphasis added).  The Instagram TOU goes on to state that "[i]n all other cases, ***the claim*** must be resolved exclusively in the U.S. District Court for the Northern District of California, or a state court located in San Mateo County."  *Id*. (emphasis added).  Under the canon of consistent usage, a court reads contractual terms as having one consistent meaning.  *United States v. Castleman*, 572 U.S. 157, 174 (2014) ("[T]he presumption of consistent usage [is] the rule of thumb that a term generally means the same thing each time it is used") (Scalia, J., concurring).

---

[2] *See* https://blog.hootsuite.com/instagram-statistics/ (accessed July 13, 2019).

(Footnote Continued on Next Page.)

Here, the definition that Instagram chose for the term "claim" is limited to cases in which Instagram is the defendant.[3] When Instagram chooses to sue, as here, the TOU is silent as to jurisdiction, which Instagram must establish independently.

Second, the forum selection provisions contained in the Terms explicitly relate to disputes that "arise[] out of or relate[] to *these Terms*," Instagram TOU at 9, and the Terms govern "*your* use of Instagram." *Id*. at 1. The natural and logical reading of the TOU is that they govern that individual's use of Instagram for that specific account. In contrast, Plaintiffs would interpret the Terms as a novel, perpetual personal obligation that governs that person's actions with any account (or even actions unrelated to any account), in any capacity, for any entity, forever. The Court should reject that unnatural and unprecedented reading. This dispute, as described in the Complaint, does not arise out of or relate to Defendants' personal Instagram accounts; it relates to alleged commercial misconduct by SMS and its LikeSocial.co website. Plaintiffs cannot establish jurisdiction over all four Defendants by simply referring to two individual Defendants' personal, defunct, and unrelated Instagram accounts.[4]

Third, exercising jurisdiction over Defendants based on an alleged personal Instagram account – an account that has ***absolutely nothing to do*** with the commercial misconduct alleged in the Complaint – would be unreasonable, and would ignore the unique burdens on foreign defendants that arise from having to defend themselves across national borders, burdens that are entitled to "significant weight" in assessing reasonableness. *See Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945); *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 – 478 (1985);

---

[3] That Instagram disputes Defendants' interpretation of this term at most indicates ambiguity in the TOU, which must be resolved against Instagram. *See Mastrobuno v. Sherson Lehman*, 514 U.S. 52, 62 (1995) (discussing common-law rule of *contra proferentem*).

[4] The same reasoning applies to the separate commercial accounts that Plaintiffs claim Defendants created. *See* Opp., Exh. 1. Just as it cannot be the case that opening a personal Instagram account subjects you to Instagram's jurisdiction clause for a dispute that is unrelated to that personal account, it also cannot be the case that having opened an account for "Company A" subjects you to Instagram's jurisdiction clause for a dispute related to "Company B." *See, e.g., Rey v. Rey*, 666 F. App'x 675, 679 (9th Cir. 2016) (written agreement's forum selection clause, which encompassed only disputes "stemming from," or "arising under" a written agreement, does not apply to disputes between the parties that are unrelated to the agreement).

(Footnote Continued on Next Page.)

*Asahi Metal Industry Co., Ltd. v. Superior Court*, 480 U.S. 102, 114 (1987); Doc. #23 at 9–10.

For these reasons, Plaintiffs cannot establish that Defendants consented to jurisdiction in California to litigate this dispute. Therefore, jurisdiction over Defendants in this venue is only proper if Plaintiffs can establish specific jurisdiction.[5] As discussed in the Motion and below, Plaintiffs have not – and cannot – meet their burden to establish that specific jurisdiction exists.

**B.   The Facts Do Not Support a Finding that Specific Jurisdiction Over Defendants in the Northern District of California is Proper**

In their Opposition, Plaintiffs try – and fail – to establish that specific jurisdiction exists by arguing: (1) that Defendants purposefully directed activities at California and availed themselves of the benefits of doing business in California (invoking the three-part *Calder* test for purposeful direction); (2) that Plaintiffs' claims arise out of or relate to Defendants' forum-related activities, and (3) that the exercise of jurisdiction in this case would be reasonable. Opp. at 10–16 (*citing Brayton Purcell LLP v. Recordon & Recordon*, 575 F.3d 981, 985 (9th Cir. 2009)). As set forth in detail in Defendants' moving papers, and discussed below, these specific jurisdiction elements are not satisfied in this case.

**1.   The Opposition Does Not Establish that Defendants Purposefully Directed Any Activity at California**

In an attempt to establish that Defendants ***purposefully directed*** their activity at California, Plaintiffs argue that Defendants (1) committed intentional acts, that were (2) expressly aimed at California, and that (3) caused Plaintiffs harm. Opp. at 11–13 (*citing Calder v. Jones*, 465 U.S. 783, 788 (1984)). Plaintiffs miss the mark on each *Calder* element.

**(a)   Intentional Act**

To the first *Calder* element, Plaintiffs assert that "Defendants acted intentionally in operating a series of businesses designed manipulate [*sic*] Instagram's platform through the sale of ["likes"]." Opp. at 11. It is true that Defendants "acted intentionally" in operating a business; specifically, Defendants operated SMS and its website LikeSocial.co. Motion at 3. Where Plaintiffs are confused is in their assertion that Defendants' business was "designed [to]

---

[5] Plaintiffs do not allege general jurisdiction. *See* Opp. at n.10.

manipulate Instagram's platform through the sale of ["likes"]." Opp. at 11. The LikeSocial.co website did not "manipulate Instagram's platform" in any way. Motion at 4, 14; Doc. # 23-3 (Pasanen Declaration) at ¶ 24. Rather, SMS's LikeSocial.co business charged Instagram users a fee to connect them with third-party vendors that independently provided "likes" and "followers." *Id*.

### (b)  Expressly Aimed

To the second *Calder* element, Plaintiffs once again demonstrate their misunderstanding of the LikeSocial.co business. Here, Plaintiffs repeat the false assertion that Defendants "delivered" services to Instagram users. To the contrary, and as described in detail in the Motion to Dismiss, Defendants did not, and have never, "delivered" anything to Instagram users. Motion at 4, 14. If there was "manipulation" of an Instagram user's account (e.g., adding a "like" to a user's picture) it was done by third-party vendors that are not parties to this lawsuit. *Id*.; *see Walden v. Fiore*, 571 U.S. 277, 284 (2014) ("[w]e have consistently rejected attempts to satisfy the defendant-focused 'minimum contacts' inquiry by demonstrating contacts between the plaintiff (or third parties) and the forum State").[6] To the extent that Plaintiffs' specific jurisdiction argument relies on the assertion that Defendants "delivered" services to Instagram users, that argument must fail.

Still on the second *Calder* element, Plaintiffs assert that Defendants' acts were expressly aimed at California because "Defendants had customers based in California." Opp. at 11. To be clear, the LikeSocial.co business was marketed on a public website and provided its services to customers around the world. Pasanen Decl. at ¶ 19. Defendants did not specifically advertise to California residents, or otherwise direct their services toward Californians. *Id*. at 18.

---

[6] Here, Plaintiffs reference exhibits to their Complaint that purportedly reflect screengrabs of LikeSocial.co and SocialEnvy.co's terms and conditions and marketing materials. Opp. at 11:9-17. Plaintiffs assert that "Defendants do not dispute ***those admissions***, which now must be accepted as true." *Id*. (emphasis added). Defendants are unaware of any authority suggesting that exhibits to a complaint constitute an "admission" by a defendant, nor any authority that a defendant challenging jurisdiction must specifically "dispute" the entirety of a complaint and its exhibits, lest the complaint and exhibits be "accepted as true." To the extent Defendants are required to "dispute" the exhibits to Plaintiffs' Complaint, Defendants reserve their right to do so. *See* Hedges Decl. ¶ 4.

Regardless, the fact that a small percentage of Instagram users are Californians, and thus some small number of Californians presumably were among Defendants' clientele, would be, without more, insufficient to establish specific jurisdiction. *See Walden*, 571 U.S. at 285 (jurisdiction analysis "looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there"); *id*. at 286 ("[d]ue process requires that a defendant be haled into court in a forum State based on his own affiliation with the State, not based on the 'random, fortuitous, or attenuated' contacts he makes by interacting with other persons affiliated with the State") (*quoting Burger King*, 471 U.S. at 475).

Finally, Plaintiffs assert that Defendants' acts were expressly aimed at California because Defendants used PayPal in connection with their business. Opp. at 11. Again, this amounts to nothing more than an attenuated contact with a third-party California entity, which is insufficient to establish that jurisdiction over Defendants in California is proper. *See Walden*, 571 U.S. at 286.

### (c)   Harm to Plaintiffs

Plaintiffs claim, in conclusory fashion, that Defendants "reasonably could expect their conduct to cause harm to Instagram in California," and that Defendants knew "that their intentional actions were harming [California] Plaintiffs." Opp. at 12. In the Complaint, Plaintiffs assert that "Defendants' unauthorized use of [Instagram] has injured [Instagram's] reputation, public-trust, and goodwill." *See* Comp. at ¶ 77. Defendants deny this unsupported (and illogical) allegation of harm. It is difficult to imagine how Defendants' business negatively impacted the public reputation of a social-networking behemoth (Facebook and Instagram) with a combined 2.7 billion monthly active users,[7] and Plaintiffs offer nothing more than conclusory allegations of harm in opposing Defendants' Motion to Dismiss. This is inadequate to satisfy the *Calder* test. Further, the third *Calder* element must be considered in conjunction with the first two elements, which, as discussed immediately above, Plaintiffs have not and cannot satisfy. Logically, because Defendants did not commit any intentional acts that were expressly aimed at

---

[7] https://www.businessinsider.com/facebook-grew-monthly-average-users-in-q1-2019-4 (accessed July 16, 2019).

8

CASE NO. 3:19-CV-02262 – DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND FORUM NON CONVENIENS

California, they could not have committed an intentional act that was expressly aimed at California that caused harm to Plaintiffs.

Because Plaintiffs cannot satisfy the three *Calder* elements, they have not – and cannot – establish the purposeful direction prong of a specific jurisdiction analysis.

### 2. Defendants Did not Engage in Any Forum-Related Activities that Would Warrant Exercising Specific Jurisdiction

To establish personal jurisdiction, Plaintiffs must demonstrate that their claims arise out of Defendants' forum-related activities. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004). Here, the Opposition makes only the perfunctory, conclusory, and unsupported assertion that "all of Plaintiffs' claims arise out of Defendants' misuse and abuse of Plaintiffs' California-based assets and infrastructure." Opp. at 13. In fact, Plaintiffs' claims for (1) breach of contract (for Defendants' alleged violation of Instagram's TOU), (2) computer hacking under California Penal Code § 502 and the federal Computer Fraud and Abuse Act, 18 U.S.C. § 1030 (for allegedly accessing and using Plaintiffs' computers without authorization), and (3) unjust enrichment, do not arise out of any forum-related activities by Defendants.

#### (a) Breach of Contract

In their Complaint, Plaintiffs allege that Defendants "agreed to Instagram's TOU" then breached those Terms by "accessing Instagram to fraudulently and artificially inflate the likes associated with certain Instagram accounts using thousands of other Instagram accounts." Complaint at ¶ 46. However, as discussed herein and in Defendants' Motion, Defendants did not agree to Instagram's TOU in any way that would subject them to breach of contract liability on the allegations set forth in the Complaint, nor did Defendants access Instagram to "inflate likes." In fact, Defendants never engaged in the alleged conduct that forms the basis of Plaintiffs' breach of contract claim. *See generally* Motion to Dismiss. Plaintiffs' faulty breach of contract claim does not – and cannot – arise out of Defendants' forum-related activities.

#### (b) Computer Hacking

Plaintiffs allege that Defendants accessed Instagram's computer networks without authorization (*see* Complaint ¶¶ 54, 61), but Defendants never accessed the Instagram computer

9

CASE NO. 3:19-CV-02262 – DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND FORUM NON CONVENIENS

network in any way that relates to the allegations in the Complaint. Motion at 4, 14; Doc. #23-3 at ¶ 24; Doc. #23-1 ¶ 4. Defendants simply did not engage in the misconduct alleged in the Complaint (i.e., using thousands of "bots" to manipulate individual Instagram accounts). All services delivered to individual Instagram accounts were delivered not by Defendants, but by third-party vendors outside of the U.S. *Id*. Plaintiffs are wrong on the facts, and their computer hacking claims do not arise out of Defendants' forum-related activities.

The Opposition seeks to downplay the legal significance of the fact that Defendants never accessed or manipulated Instagram users' accounts. Opp. at 9. Relying on *Manetti-Farrow, Inc. v. Gucci America, Inc.*, 858 F.2d 509, 514, n.5 (9th Cir. 1988), Plaintiffs seem to argue that jurisdiction over Defendants in this venue is proper even if Defendants themselves never "delivered" services to Instagram users, because Defendants are "closely related" to the Instagram accounts that did allegedly deliver services to Instagram users.[8] *Id*. However, Plaintiffs misinterpret *Manetti-Farrow* and misapply that case to these facts.

In *Manetti-Farrow*, it was undisputed that plaintiff Manetti–Farrow (a California corporation) and defendant Gucci Parfums (an Italian company) had entered into a contract that contained a valid forum selection clause designating Florence, Italy as the forum for resolution of any controversy. *Manetti-Farrow*, 858 F.2d at 510. There were other defendants to the litigation (specifically Gucci subsidiaries and directors) that were "participants" in the underlying business relationship, but that had not signed the contract containing the forum selection clause. *Id*. at 514, n.5. Manetti-Farrow sued in the Northern District of California and defendants obtained dismissal based on valid forum selection clause. *Id*. at 510. On appeal, Manetti–Farrow argued that the forum selection clause should apply only to Gucci Parfums and should not apply to the other defendants that did not sign the contract. *Id*. The Ninth Circuit rejected Manetti–Farrow's argument, agreeing with the district court that "the alleged conduct of the non-parties is so closely related to the contractual relationship that the forum selection clause

---

[8] Here, Plaintiffs once again falsely assert that "Defendants' "entire business model depended on the creation and use of Instagram accounts" and that Defendants "used thousands of Instagram accounts." Opp. at 9. As explained in detail in Defendants' moving papers, Defendants did not create or use Instagram accounts to carry out their business.

10

CASE NO. 3:19-CV-02262 – DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND FORUM NON CONVENIENS

applies to all defendants." *Id*. at 514 n.5.

*Manetti-Farrow* cannot be read to support the broad proposition that Defendants can or should be roped in to litigate in the Northern District based on the third-party vendors' Instagram accounts. In this case, while the third-party vendors may operate Instagram accounts with jurisdiction provisions (though there is no competent evidence to show that), the Defendants have not agreed to Instagram's forum selection clause in any way that would bind Defendants to that provision.[9] Further, Defendants have no formal business association with the third-parties (as did the defendants in *Manetti-Farrow*, where the non-signatories were subsidiaries and officers of the signatory) that would permit jurisdiction over the third-parties to be imputed to Defendants. Finally, the third-party vendors are not defendants in this case, as were the non-signatory defendants in *Manetti-Farrow*.

To the extent Plaintiffs contort the inapposite *Manetti-Farrow* decision to downplay the legal significance of the third-party vendors' role in a jurisdiction analysis, that effort should fail.

### (c)  Unjust Enrichment

Finally, any alleged unjust enrichment on the part of Defendants relates exclusively to their activities in New Zealand, and in no way relates to actions taken by Defendants in California (of which there are none).

Because Plaintiffs have not demonstrated that their claims arise out of any forum-related activities carried out by Defendants, they have not satisfied the second prong of the limited jurisdiction test.

### 3.  <u>The Exercise of Jurisdiction over Defendants Would Be Unreasonable</u>

The Opposition does not overcome Defendants' showing that the exercise of jurisdiction over Defendants in this venue would be unreasonable. Defendants will not repeat their arguments here, but rather will respond to the Opposition's omissions and inaccuracies related to

---

[9] It is axiomatic, even in the context of internet click-wrap agreements, that a party cannot be bound to the terms of a contract to which it never agreed. *See Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1175 (9th Cir. 2014) ("[w]hile new commerce on the Internet has exposed courts to many new situations, it has not fundamentally changed the principles of contract … [o]ne such principle is the requirement that mutual manifestation of assent") (internal citations and quotations omitted).

this point.

First, Plaintiffs entirely fail to respond to Defendants' argument that the unique burdens on foreign defendants, which arise from having to defend themselves across national borders, are entitled to "significant weight" in assessing reasonableness. Motion at 18-19 (*citing Asahi*, 480 U.S. at 114; *Rano v. Sipa Press, Inc.*, 987 F2d 580, 588 (9th Cir. 1993) (recognizing that "litigation against an alien defendant requires a higher jurisdictional barrier than litigation against a citizen from a sister state")). The law of personal jurisdiction is "asymmetrical and is primarily concerned with the defendant's burden." *Terracom v. Valley Nat'l Bank*, 49 F.3d 555, 561 (9th Cir. 1995). Here, the exercise of jurisdiction over the New Zealand Defendants would constitute a tremendous burden.

Plaintiffs assert that "because Defendants directed their actions [to California], there is no need to analyze" the extent of Defendants' purposeful interjection into California. Opp. at 13. To the contrary, Defendants did not purposefully interject themselves into California. *See generally* Motion to Dismiss. To the extent that Plaintiffs claim purposeful interjection (e.g., Defendants' purported use of a PayPal account (Opp. at 14)), the extent of such "interjection" is random, attenuated, and irrelevant to a jurisdiction analysis. *See Walden*, 571 U.S. at 285.

Attempting to downplay the burden to Defendants of litigating in California, Plaintiffs assert (absurdly) that Defendants operated a business that "profited over $9 million in less than one year." Opp. at 13. This is false (*see* Hedges Decl. ¶ 4), and Plaintiffs offer no evidence of any kind to support the claim. Plaintiffs also assert that "Defendants have the financial means [to] retain[] California counsel." Opp. at 13. Fortunately for all defendants challenging jurisdiction, a defendant's ability to hire local counsel is not the test for whether jurisdiction is reasonable.

As discussed in detail in Defendants' moving papers, the exercise of jurisdiction over these foreign Defendants in California would be unreasonable. Plaintiffs completely fail to address the unique burdens faced by these foreign Defendants, which should be given "significant weight" in assessing reasonableness. *See Asahi*, 480 U.S. at 114. Because it would be unreasonable to exercise jurisdiction over these Defendants, the Motion to Dismiss should be

12

CASE NO. 3:19-CV-02262 – DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND FORUM NON CONVENIENS

granted.

### 4. Even If Social Media Series Limited Were Subject to Personal Jurisdiction in This Court, the Individually Named Defendants Are Not Subject to Personal Jurisdiction in California

The Opposition does not respond to Defendants' argument that SMS's directors – the Individually Named Defendants – are not automatically subject to personal jurisdiction in California even if SMS is subject to jurisdiction. Motion to Dismiss at 22–23. As discussed in Defendants' Motion, the mere fact that a corporation is subject to local jurisdiction does not mean its nonresident officers, directors, agents, and employees are likewise subject to local jurisdiction. *Calder v. Jones*, 465 U.S. 783, 790 (1984) (a defendant's contacts with forum state are not to be judged according to her employer's activities there). Here, even if the Court determines that personal jurisdiction over SMS is proper, it may not automatically make the same determination regarding SMS's directors.

### 5. Jurisdictional Discovery

Defendants object to Plaintiffs' overly broad request for jurisdictional discovery. *See* Opp. at 16-17. However, should the Court be inclined toward any outcome other than outright dismissal of the Complaint for lack of personal jurisdiction, Defendants request the opportunity to first engage in limited, focused jurisdictional discovery to ascertain the specific TOUs that Plaintiffs claim apply to each Defendant and the time and nature of the alleged assent, the factual basis for Plaintiffs' false claim that Defendants took actions that had adverse effect on Plaintiffs' computers or servers in California, and to address the factual inaccuracies prevalent in Plaintiffs' Complaint and Opposition (e.g., the claims that Defendants "used a network of computer bots and Instagram accounts to deliver millions of automated and fake likes on Instagram," and that Defendants "profited over $9 million in less than one year." Opp. at 3, 13)).

## III. DISMISSAL FOR FORUM NON CONVENIENS IS PROPER

### A. Defendants Did Not "Waive" FNC

Plaintiffs assert that Defendants "waived any objection to this form by agreeing to the forum selection clause in Instagram's TOU." This argument relies entirely on the flawed

13

CASE NO. 3:19-CV-02262 – DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND FORUM NON CONVENIENS

premise that Defendants are "bound by the TOU's forum selection clause." Opp. at 19. As discussed above, only two Defendants agreed to an Instagram TOU, the TOU in the record does not require jurisdiction in California, and no Defendant agreed to Instagram's forum selection clause in connection with any accounts related to the misconduct alleged in the Complaint. Plaintiffs should not be permitted to use unrelated Instagram accounts to force Defendants to litigate in California when New Zealand is the appropriate venue for this case.

Further, Plaintiffs are simply incorrect that the existence of a forum selection clause somehow blocks FNC dismissal. Even where (unlike here) parties have agreed to a forum selection clause, a defendant is not prevented from seeking dismissal on FNC grounds. *See Mueller*, 880 F.3d at 893 ("an exceptional public-interest justification can displace a contractual choice of forum"). As discussed in detail in Defendants' Motion, New Zealand is an adequate alternate forum and the balance of private and public interest factors favor dismissal. Motion p. 23–25. Plaintiffs' "waiver" argument is unavailing.

### B. New Zealand is an Adequate Alternate Forum

Plaintiffs claim that Defendants have failed to demonstrate that New Zealand is an adequate alternate forum because Defendants have not listed the remedies available to Plaintiffs under New Zealand law. Opp. at 19–20. As set forth in the accompanying declaration of David Gerard Dewar, Plaintiffs can pursue functionally identical relief in New Zealand as they can in California. *See* Declaration of David Gerard Dewar, ¶ 2.

### C. The Public and Private Interest Factors Favor New Zealand

With respect to private interest factors, Plaintiffs generally argue that California is the appropriate venue for this matter because Plaintiffs would have greater difficulty prosecuting their case in New Zealand than they would in the U.S. Opp. at 20 – 21. However, the key witnesses in this case – the Individually Named Defendants – are all located in New Zealand. Plaintiffs point to the fact that "PayPal and GoDaddy [] are located in the U.S." Opp. at 20. As Defendants do not dispute that they processed certain payments using PayPal, or that they registered the LikeSocial.co website using GoDaddy, it is unclear why Plaintiffs believe that

those entities are critical to the resolution of this dispute. And, contrary to Plaintiffs' assertion, FNC dismissal does not require Defendants to demonstrate that they will be unable to receive a "fair trial" in the U.S. Opp. at 21.

Regarding the public interest factors, Plaintiffs confusingly assert that "California [] has an interest in preventing fraud from taking place within its borders." Opp. at 21. That may be true, but this is not a fraud case; while Plaintiffs may characterize Defendants' business model as "fraudulent," Plaintiffs' claims are for breach of contract, computer hacking, and unjust enrichment. And while Plaintiffs assert that American courts are better situated to deal with American computer hacking statutes (*id*.), this argument misleadingly suggests that Plaintiffs would pursue American computer hacking claims in New Zealand, as opposed to pursuing the New Zealand equivalent to those claims.

Defendants have demonstrated that New Zealand is an adequate alternate forum for this litigation, and that the balance of private and public factors favor dismissal. The Opposition does not overcome this showing.

### IV.  CONCLUSION

For the foregoing reasons, and for the reasons stated in Defendants' moving papers, Defendants respectfully request that their Motion to Dismiss be granted in its entirety.

Dated: July 17, 2019

**THE NORTON LAW FIRM PC**

By: _____
   Fred Norton
   *Attorneys for Defendants*

15

CASE NO. 3:19-CV-02262 – DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND FORUM NON CONVENIENS